Maria De Los Angeles
BOTELLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–86–00077–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 22, 1986.

Jose Eduardo Pena, Laredo, for appellant.

Rogelio Rios, Laredo, for appellee.

## OPINION

Before CADENA, C.J., and BUTTS and DIAL, JJ.

BUTTS, Justice.

This is an appeal from a conviction for sale of a child. TEX. PENAL CODE ANN. § 25.06 (Vernon Supp.1986). The jury, after finding appellant guilty, assessed punishment at six years' imprisonment.

Appellant, the mother of the baby girl born February 1, 1985, brings four grounds of error: that the indictment is fundamentally defective; that the statute, § 25.06 *supra*, is unconstitutional; that the evidence is insufficient to sustain a conviction; and, that submission to the jury of an instruction on parole laws was error. We affirm.

Section 25.06 provides, in pertinent part:

(a) A person commits an offense if he:

(1) possesses a child ... and he offers to accept, agrees to accept, or accepts a thing of value for the delivery of the child to another *or* for the possession of the child by another for purposes of adoption; ... (Emphasis added).

In this case the indictment provides, in pertinent part:

[Appellant] having possession of a child ..., did then and there knowingly accept a thing of value, to-wit: current money of the United States of America, from Maria Villarreal for the delivery of said child to the said Maria Villarreal ...

The statute sets out more than one way in which the offense of sale of a child may be committed. The State in this case indicted appellant under the first provision of the statute. The disjunctive "or" separates that part of the statute defining another method: "or for the possession of the child by another for purposes of adoption."

Appellant argues fundamental error resulted when the indictment failed to al-

lege the delivery of the child was *for purposes of adoption.* Since the statute is framed in the disjunctive, there was no necessity for the additional averment that the delivery of the child was for the purposes of adoption. *Hutchins v. State,* 426 S.W.2d 235, 236 (Tex.Crim.App.1968). The indictment drawn in the language of the statute creating and defining the offense is sufficient. We hold there was no fundamental defect in the indictment and overrule the first ground of error.

The next argument is that the statute is unconstitutional and therefore void because it fails to give reasonable notice of the kind of conduct which constitutes the offense of sale of a child, thus violating the due process clauses of the Texas and United States Constitutions. We note this was not an argument at trial.

■ The contention of absence of notice in an indictment is properly one for quashal of the indictment by motion to the trial court. To raise the point for the first time on appeal is not timely. This may be contrasted with jurisdictional defects which may be raised at any time. *Drumm v. State,* 560 S.W.2d 944, 946 (Tex.Crim.App. 1978). The contention has been waived.

Where words of a statute are not defined, the words employed are ordinarily given their plain meaning without regard to the distinction usually made between the construction of penal laws and laws on other subjects, unless the act clearly shows they were used in some other sense. *Campos v. State,* 623 S.W.2d 657, 658 (Tex. Crim.App.1981). *See,* former TEX.REV. CIV.STAT.ANN. art. 5429b–2 § 2.01 (Vernon 1958), the Code Construction Act. *See generally,* Ch. 311 and Ch. 312, TEX.REV. CIV.STAT., GOV'T.CODE (1984 Pamphlet).

The gist of this statute is that a person who possesses a child agrees to sell the child for a thing of value either by offering, agreeing to accept, or accepting the valuable thing. This is accomplished by delivery to another. A different way of effecting a sale results when the accused offers, agrees to accept, or does accept the valuable thing for the possession of the child by another for purposes of adoption. Thus the intent of the Legislature was to make the sale of a child illegal, whether or not it was for purposes of adoption.

■ If the point had been raised by a motion to quash the indictment, we believe that the statute gives reasonable notice of what acts will constitute sale of a child. A person of common intelligence can determine with reasonable precision what conduct it is his duty to avoid under the statute. *See Campos v. State, supra* at 659.

Appellant next says the evidence is insufficient to prove she offered to accept, agreed to accept, or accepted a thing of value for the delivery of the child.

On June 8, 1985, undercover investigator Maria Villarreal of the Laredo Police Department went to the home of appellant. She told appellant's mother, (Gaytan) the grandmother of the baby girl, that Celia from the "Plasma Center" had sent her. The grandmother responded, "Oh, the baby?" Also present was the sister (Cantu) of the grandmother. The ensuing conversation was recorded. Along with remarks concerning the mother's (appellant) lack of care for the child, even her abuse of the baby, her frequenting of bars, and the fact that it was the grandmother who took care of the child, the grandmother began negotiation for sale of the baby. The aunt agreed that the mother did not care for the baby and apparently joined in with the scheme. Appellant was angry and shouted at them, however, she did not take the child away from the grandmother. The grandmother and aunt negotiated in more detail outside appellant's presence. They arranged to meet Villarreal at a 7–11 store on Monday, June 10, at 1:00 P.M.

When the three women arrived at the 7–11 store on Monday, appellant held the baby. Amidst admonishments from the grandmother not to tell anyone or the police, the undercover investigator, wired to record the event, closed the sale. The purchase price was $5,000.00, that sum purportedly in an envelope given to the women by Villarreal. The investigator asked the

grandmother to sign a receipt for the child. The appellant said, "What about me, I am the mother of the child. Like where do I sign?" She was told she could sign too. All three signed.

The grandmother said that when the case worker (welfare) came to the house, she was going to tell her the appellant had taken the child away, and their whereabouts were unknown. At that time the other policemen who were observing and listening by radio to the event moved in and arrested the three women.

At trial the investigator testified that she asked the grandmother whether she had any more problems with the mother of the child, and she responded "I took care of that already ... No, I already talked to her, and ... she settled it." Villarreal admitted that she realized she was dealing with the grandmother, that appellant never stated directly to her she would take five thousand dollars for her baby. But when appellant signed the receipt, said the investigator, she agreed to accept the money.[1] She said the appellant was "handing" the baby to her when the officers arrived.

When appellant testified, she admitted she did not report the action concerning the proposed sale to the police on June 8, two days before the sale. She stated she had protested the sale to her mother and aunt, but she did not attempt to stop them from taking the baby with them on June 8. Her reason: "No, because I have something else on my mind ... I already had about two weeks not going home ... in the bar with all the guys and I never stay with my baby. I never listen to my baby. I always leave it to her." She said when she went to the 7–11 store with the baby, she was not angry at that time. The evidence indicates she took an active part in the transaction at the meeting.

The tape recording of the conversation between the three women and the investigator at the 7–11 store tracks the transaction. Although appellant says little, and certainly not as much as the grandmother, neither does she protest the sale. Moreover, it is significant that she participated in the transaction. She signed the receipt, and she was holding the baby during the deal. She made no attempt to remove the child, call the police, alert any passersby, or take affirmative action to prevent the close of the sale. In fact, she joined in and was handing the child to the investigator when the other officers moved into the scene. The jury could reasonably conclude she participated in the sale. An instruction on the law of "parties" was submitted to the jury. TEX. PENAL CODE ANN. § 7.02 (a)(2) (Vernon 1974).

Viewing the evidence in the light most favorable to the verdict, we hold that any rational trier of fact could have found the essential elements of the offense of sale of a child beyond a reasonable doubt. *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Crim. App.1983). The third ground of error is overruled.

The final argument is that the amendment in the parole laws was not in effect at the time of the commission of the offense. TEX.CODE CRIM.PROC.ANN. art. 37.07 § 4 (Vernon Supp.1986). The objection to the jury charge at the punishment phase was that this was an ex post facto law.

The United States Constitution art. I, § 9, cl. 3 and the Texas constitution art. I § 16 prohibit ex post facto laws. An ex post facto law is one that makes an act, innocent at the time of its passage, criminal; or it aggravates an offense and makes it greater than when committed; or it in-

1. The receipt is as follows:
Junio 10, 1985
Yo, Guadalupe B. Gaytan, teniendo possession de mi nieta, Guadalupe Isabel Botello, acepto la cantidad de $5,000.00 dolores por la entrega permanente de mi nieta Guadalupe Isabel Botello, a la Senora Maria Villanueva.

[signature] Maria de Los Angeles Botello
Firma

[signatures] M.G. Gaytan          Yolanda Cantu
Testigo

The evidence shows that Mrs. Gaytan read the note out loud in English to her daughter [appellant], Mrs. Cantu, and the investigator. The

flicts a greater punishment than the law annexed to the crime when committed; or it authorizes a conviction upon less evidence than the law required at the time of the commission of the offense. *See Dawson v. State,* 6 Tex. 347 (1851). Statutory changes in the mode of trial or rules of evidence which do not deprive an accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage do not violate constitutional prohibitions against "ex post facto laws." *Hill v. State,* 146 Tex.Cr.R. 333, 171 S.W.2d 880 (1943), *pet dism'd.,* 320 U.S. 806, 64 S.Ct. 72, 88 L.Ed. 487.

█ The statute became effective on September 1, 1985. It is a statutory change in mode of jury trials. Like purely procedural statutes, it controls litigation from its effective date. *See, Wilson v. State,* 473 S.W.2d 532, 535 (Tex.Crim.App. 1971). The ground of error is overruled.

The judgment is affirmed.

tape recording of this was introduced in evi-