Ricardo DIAZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–86–00037–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 10, 1986.

Oscar J. Pena, Sr., Laredo, for appellant.

Anne L. Cavazas, Asst. Dist. Atty., Laredo, for appellee.

Before ESQUIVEL, BUTTS and DIAL, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for murder. TEX.PENAL.CODE ANN. § 19.-02(a)(1) (Vernon 1974). A jury assessed punishment at 40 years' imprisonment.

Appellant brings 18 points of error, the first two regarding TEX.CODE CRIM.PROC.ANN. art. 37.07 (Vernon 1981 and Supp.1986). In his first point appellant says that amendments to article 37.07 permitting instruction on parole laws to juries violate the ex post facto provision of the constitution. U.S. CONST. art. I, § 9; TEX. CONST. art. I, § 16. We are not told by what means there is a violation, however. The fact that a new law is applied procedurally in a trial of an offense occurring before the passage of the new law does not always result in error. The section of article 37.07, § 4 included in the jury charge and to which appellant objected at trial, does not make the offense charged a greater one; nor does it make an innocent act criminal; nor does it inflict greater punishment than the murder law contained when the instant offense was committed. We hold it has not been shown to be an ex post facto law. *See, Botello v. State,* 720 S.W.2d 838 (Tex.App.—San Antonio 1986).

In the same point appellant argues generally that the jury instruction on parole and "good time" laws violates the due process protections guaranteed by the United States Constitution. He says it informed the instant jury of the possible effect of these laws, offered no real guidance, and permitted speculation by the jury. We must presume that a jury follows the trial court's instruction. *Ainsworth v. State,* 517 S.W.2d 274, 277 (Tex. Crim.App.1975). While a jury might conceivably speculate as to how much time an accused will serve, in the present case there is no evidence that they actually did this. Appellant has not demonstrated harm to himself which resulted from the jury's receipt of the instruction. The first point is overruled.

Appellant next argues generally that article 37.07 of the Texas Code of Criminal Procedure is unconstitutional. The argument refers to section 4 and the jury instruction to which appellant objected. Appellant says its application has the effect of "tripling" punishment and permits the jury speculation of the time to be served. Other than general statements, there is no briefing of the argument. We overrule the second point.[1]

Seven persons participated in the encounter which resulted in death for one. There were four Diaz brothers and their cousin, appellant Ricardo Diaz. The other two were the Martinez brothers, one of them Eduardo, the deceased. On May 21, 1983, the five Diaz' were playing pool and drinking in a bar in Laredo at closing time, about 1:00 A.M. The Martinez brothers arrived at the door, but the owner refused them admittance. The owner, Juan Gutierrez, and Jaime Martinez testified that one of the Diaz' struck Eduardo as he stood just inside the door, and the fight moved outside with all seven participating. The Diaz' testified that the Martinez brothers waited in the "yard" and attacked them with knives as each exited the bar.

Jaime denied the two had knives or any weapons. A butcher knife was recovered later in the yard; it was shown the owner barbequed meat sometimes out there, but

---

1. By supplemental brief appellant cites *Rose v. State,* No. 5-85-01136-CR (Tex.App.—Dallas Aug. 6, 1986), a panel opinion since withdrawn by order of Sept. 12, 1986. Violation of separation of powers formed the basis of that opinion. Appellant did not raise that question at trial.

he did not recognize the knife. It is undisputed that appellant shot the deceased, Eduardo, and the brother, Jaime. The fatal bullet entered the deceased's back. The other bullet entered his shoulder in the front.

Appellant testified that Jaime was attacking him with a knife, "throwing stabs," and he saw the deceased coming at him from the side. He said he shot at that time. However, Jaime testified that Eduardo, the deceased, was running away when he was shot in the back and that he reached the fence. The body was found by the fence.

The four Diaz brothers and appellant went to their houses immediately after the encounter. Evidence showed they discussed the episode, and then all went to bed. The next day they went to the hospital and were treated for cuts and bruises and released. They did not press charges against anyone.

The charge instructed the jury on appellant's right of self-defense; it further instructed on appellant's right to defend a third person. TEX.PEN.CODE ANN. § 9.31 and 9.33 (Vernon 1974). Appellant testified to prior specific acts of the deceased, involving himself and his cousins, of which he had knowledge. These were specific instances of fighting (violence) by the deceased.

 In a homicide case the defendant's *state of mind* at the time of the killing becomes a relevant issue when the defendant claims self-defense. The defendant may show the deceased's reputation for violence and prior specific acts of violence which are known to the defendant or of which the defendant has been informed. *See Thompson v. State,* 659 S.W.2d 649, 653 (Tex.Crim.App.1983); *Lowe v. State,* 612 S.W.2d 579 (Tex.Crim.App.1981) (In defense of another); *Dempsey v. State,* 159 Tex.Crim. 602, 266 S.W.2d 875 (1954). In the present case there was also other testimony concerning the deceased's reputation for violence, including one incident related by his own brother, Jaime.

In his third point of error appellant complains of the exclusion of certain evidence to show the violent character of the deceased and that he was the aggressor. The evidence excluded was: that of a bar owner concerning a beating given a young person by the deceased[2] and the facts concerning the deceased's conviction for aggravated assault on a peace officer.

 To raise the issue of self-defense some evidence of aggression on the part of the deceased must be shown. Section 9.31, *supra. Thompson v. State, supra* at 653. Reputation evidence to show the deceased's violent character or prior specific acts of misconduct committed by him are admissible in so far as they tend to *explain* the deceased's conduct; this conduct is probative of "who was in fact the aggressor" as opposed to "what the defendant thought." The defendant need not show his own awareness of it at the time of the offense. *Id.* at 654. The state of mind of the *deceased* is the issue here. There must be evidence of an act of the deceased which could be explained by the character of the deceased. *Lewis v. State,* 463 S.W.2d 186, 188 (Tex.Crim.App.1971).

 In this case the testimony of appellant and the four cousins left no doubt as to the fact and defensive theory that appellant was in the position of being attacked himself by the deceased when he shot in self-defense. Moreover, they all agreed appellant came to the defense of the other four because they "were being killed" by the deceased wielding a knife. There was no ambiguity in appellant's testimony (nor his cousins') as to the deceased's acts of aggression. Stated differently, according to the defense testimony, there was no act of the deceased which was ambiguous and which the excluded evidence tended to ex-

2. The voir dire examination of appellant by the State indicates that he either had been informed of or had personal knowledge of the beating incident at the bar. If so, this would have been admissible evidence with appellant testifying to show his state of mind. He did not offer to do this.

plain. Defense testimony consistently labelled him the aggressor in fact. In *Limon v. State*, 632 S.W.2d 812, 815 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd), the court sets out the criterion when the evidence is offered for the purpose of showing the deceased was the aggressor:

> Before any evidence of the deceased's character for violence becomes admissible, however, there must be evidence of some act of aggression by the deceased which the character tends to explain (such as drawing a gun or reaching for a pocket where one is usually carried.)

We conclude that with the facts before us there is no evidence of an act which needs to be explained by reputation. *See, Limon*, 632 S.W.2d at 815. The trial court in the present case correctly excluded the evidence offered to show that the deceased was the aggressor in fact. The point is overruled.

In point of error four appellant argues prosecutorial statements at voir dire examination of the jury panel implied the State had evidence tending to establish the guilt of appellant but which it could not produce at trial because appellant had constitutional rights precluding this. Point of error five is that the prosecutor improperly informed the panel at voir dire examination of appellant's silence after arrest. The comments were, in pertinent part:

> ... [T]here are constitutional rights and the Defendant has that right. One of them is to remain silent. We've all heard that. We've all watched the cop shows on T.V. ... That right means that he can sit there as I've told you, and say nothing. He does not have to say anything. It's up to us to prove the case. And that right didn't just attach ... or happen today. He's had this right all along. And it attaches or becomes his right the moment he becomes the suspect.... [H]e is advised of what his rights are; one of which is the right to remain silent. Who here would hold it against ... the State, if we cannot come forward and tell you, "Oh, yes, he told us

this, and that, and the other." We don't have any statements from him.

\* \* \* \* \* \*

Defense counsel objected the prosecutor "is trying to create the impression they have evidence they cannot present to the jury," and moved for a mistrial. The trial court did not rule on the motion; instead all lawyers were moved to the court's chambers. There the prosecutor explained what she meant by the statements:

> ... [H]e is told he has the right to remain silent, and who would hold it against the State if we had nothing, you know, to offer if we could not come forward and say, you know, 'He told us, yeah, he killed the Defendant (sic),' or whatever the case may be, but you know, I was saying we don't have any statements to produce for you by the Defendant. And I'm not indicating on there or suggesting that he did make statements and they're not admissible.

The Court then stated: But I think it wasn't clear ... We'll go back out there and I'll have you make the statement that there are no confessions and that he does have the right to remain silent, and we'll go forward ...

Defense counsel objected this called attention to a "bad situation," ... whether he would testify or not testify and further questioning would taint the jury. Upon returning to the jury panel, the prosecutor repeated the right of appellant to remain silent at trial and asked if anyone would hold that against appellant if he exercised his right to remain silent at trial. The prosecutor also told the jury again that the State had no statements from appellant.

As the court in *Mendoza v. State*, 552 S.W.2d 444 (Tex.Crim.App.1977) advised,

> It would have been better practice if the defendant had first moved to have the jury instructed to disregard the statements, and then moved to quash the jury if not satisfied with the instruction.

*Id.* at 447, n. 1.

In the present case appellant did not move for an instruction to disregard, nor

was there a motion to quash the jury panel. The conduct of voir dire examination rests largely within the sound discretion of the trial court. *Weaver v. State*, 476 S.W.2d 326, 327 (Tex.Crim.App.1972).

■■■ The voir dire should be viewed in its entirety. *Evert v. State*, 561 S.W.2d 489, 491 (Tex.Crim.App.1978). Here the trial court did not overrule the motion for mistrial; instead the court ordered the prosecutor to clarify the comments. Further, appellant did not inform the trial court or prosecutor that he would not testify. He filed no motion in limine and sought no instruction or clarification from the court. *McCary v. State*, 477 S.W.2d 624, 627 (Tex.Crim.App.1972). Further, the appellant testified at trial.

When the judge and lawyers returned to the courtroom, and the prosecutor explained the remarks to the jury panel, there was no further objection nor any request for an instruction, no motion to quash the jury panel, nor was there a renewed motion for mistrial. Point of error four is overruled.

■■■ Based upon the same comments by the prosecutor, appellant argues another point. While we agree the State unduly emphasized the right of appellant to remain silent, we cannot say this implied appellant was hiding his guilt and was an improper comment on his post-arrest silence (i.e., *Miranda* right to remain silent). Moreover, the objections by appellant did not address this particular aspect of his right to remain silent and thus, do not comport with the fifth point of error on appeal. Therefore, nothing is presented for review. *Hodge v. State*, 631 S.W.2d 754, 757 (Tex.Crim.App. 1982). The point is overruled.

Appellant next complains the State prejudicially "bolstered" its own witnesses' testimony. The complaint goes to the identification of appellant as the one who shot the deceased and his brother. We point out identification was not a contested issue in the case; appellant told of retrieving his gun from his car and admitted he shot the deceased and his brother.

Minerva Molina, mother of the deceased and Jaime, testified she ran to the scene from her nearby house upon hearing sounds of a fight. She said she saw appellant shooting a gun toward the "edge of the fence," but she could not see his target. She recognized appellant as he left with his cousins.

Over a "bolstering" objection by appellant, the witness said she told the police officer, Pete Martinez, at the hospital later "what had happened," "that they shot my two sons." She was not asked whether she identified appellant to the officer at that time.

■■■ The purpose of a valid "bolstering" objection is to prevent the State from lending more credibility to its unimpeached witness. The most common violations occur with identification witnesses. *E.g., Jackson v. State*, 507 S.W.2d 231 (Tex.Crim. App.1974).

There may be other kinds of bolstering, such as when the subject is a disputed central issue in the case. *E.g., Farris v. State*, 643 S.W.2d 694 (Tex.Crim.App.1982); *Garrett v. State*, 641 S.W.2d 232 (Tex. Crim.App.1981); *Robinson v. State*, 550 S.W.2d 54 (1977). Thus, an unimpeached witness' testimony may not be given more credibility by other State's evidence even though that evidence was weak.

■■■ However, this does not mean the State may not present more than one witness to relate what has happened. Both the mother and Jaime were eye-witnesses. We hold the court properly overruled the objection as to the mother's testimony about the scene of the shooting and her testimony about telling the officer "what had happened." The testimony was not subject to that objection. If the "bolstering" objection went to identification of appellant, that was not a disputed issue. We also hold the further complaint about the brother's statement to the officer is without merit. This was not a "bolstering" objection, rather, it was a hearsay one. Although the court overruled the objection, the State did not pursue the question nor

obtain a hearsay answer. Point of error six is overruled.

Appellant groups five points under his next argument: that the court improperly restricted cross-examination. He first says the court refused to permit him to show that knives used by the Martinez brothers could have been wiped clean, hidden, or tampered with. He states the court refused to allow him to make a bill of exceptions on this point.

■ The trial court sustained the State's objection to appellant's questioning the officer about what happened *before* he arrived on the scene. Appellant asked to make a bill of exceptions and the court replied, "You'll be able to do so at a later time." The trial proceeded. No bill was made. We see no error there.

Next appellant says he was not permitted to question officer Pete Martinez fully. We have examined the two portions of the record wherein the court sustained the State's hearsay objection, and we find these were proper hearsay rulings. Moreover, in one area, another officer with personal knowledge could have testified to any pertinent defensive matter.

■ Next appellant argues he could not test Jaime's credibility as a witness. He inquired whether the bar owner had on a previous occasion asked the Martinez brothers to leave. The answer was, "No." The State objected before a specific time could be mentioned. After the court sustained the objection, appellant did not again return to the subject. Nothing is presented for review. *See, Thiel v. State,* 676 S.W.2d 593 (Tex.Crim.App.1984).

The same rationale applies to his argument that he was not allowed to develop the issue of belligerency of the Martinez' when they were denied entrance to the club by the owner. Nothing is presented for review.

Appellant further argues he could not cross-examine the State's key witness, Jaime, as to what the deceased was doing when he was shot. Our examination of the record, specifically the page cited by appel-

lant, reveals no restraint was placed on the cross-examination. Point of error seven is overruled.

In the next point we find no error. After appellant was cross-examined by the State, he was then questioned on redirect examination:

Q: Ricardo, do you know if any of the Martinez' relatives worked [for] Juan Guiterrez?

■ The State objected the question was leading and also not proper redirect examination, and the court sustained the objection. This is the first and last time the subject appears in the record. As noted before, Juan Gutierrez was a witness and there to testify to this matter if it was relevant. Appellant says it was to show bias or motive on the part of Gutierrez to testify favorably as to the Martinez'. The proper time to question bias or motive was upon cross-examination of Gutierrez. The eighth point is without merit.

■ Appellant next says the trial court unduly restricted his opening statement. *See* TEX.CODE CRIM.PROC.ANN. art. 36.01 (Vernon 1966). We find no restriction of appellant in making an opening statement. When the State objected that appellant was going into "specifics" which would be admissible only from the witnesses, the court cautioned the jury that the statements of counsel were simply that and not evidence. Appellant was not denied the right to make an opening statement. The ninth point is overruled.

■ Appellant, by point of error ten, says he was deprived of the valuable right to make an effective summation. The argument is the State made groundless objections which the court sustained. The State objected four times, the first to misstatement of the evidence. The court instructed the jury to rely on their own recollection. The second objection came when appellant argued the State and Jaime had offered no explanation for the stab wounds on the Diaz'. The court sustained the objection that the State did not have to explain them.

The third objection involved the trajectory of the fatal bullet. The court again reminded the jury to use their own recollection of the evidence. The last objection followed when appellant argued the prosecutor "brought out" that the deceased "loved to fight." The objection was sustained.

Our examination of the whole jury summation fails to support the contention of denial of appellant's right to make an effective summation. The point is overruled.

■ Appellant next contends he was not permitted to show his state of mind regarding prior difficulties with the deceased. Contrary to this contention, the record shows appellant testified to previous incidents, such as, the deceased "making signs" at him, driving by the house often, staring at the Diaz', including appellant, fighting with Mario and fighting at the "river." By the time the prosecutor objected on the basis of hearsay, this testimony was before the jury. The record is almost a history of the animosity between the Diaz' and the deceased and his brother. Although the acts related about the deceased were not all between appellant and him alone, the previous relationship existing between the accused and the deceased was shown by the testimony of appellant, as well as that of the cousins. TEX.PENAL CODE ANN. § 19.06 (Vernon 1974). Also, the jury charge instructed the jury to consider appellant's state of mind at the time. We overrule the eleventh point of error.

■ Appellant next says that "sudden passion" as defined in the charge to the jury of voluntary manslaughter was not disproved by the State. The jury was charged:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 21st day of May, 1983, ... [appellant] did knowingly cause the death of [deceased] by shooting him with a gun, and that the Defendant, in so acting, was not acting under the immediate influence of sudden passion arising from an adequate cause, then you will find Defendant guilty of Murder, as charged in the indictment.

This clearly placed the burden of proof on the State once the issue had been raised. There was no objection to the charge by the State or defense. *See Braudrick v. State*, 572 S.W.2d 709 (Tex.Crim.App.1978). The jury could consider all the evidence to determine the issue. The jury failed to find appellant was acting under the immediate influence of sudden passion arising from an adequate cause. No error is shown. Point of error twelve is overruled.

■ The next argument seems to indicate error in that the trial court charged the jury fully on self-defense and defense of a third person, whereas appellant objected to the failure to include instructions on provoking the difficulty and imperfect self-defense (including right to arm oneself and seek the victim). The evidence showed appellant had the gun in his vehicle since he had been at "the ranch," not because he feared the deceased. Further, the law of provoking the difficulty places a limitation upon the right of self-defense. *Tew v. State*, 379 S.W.2d 893, 894, (Tex.Crim.App. 1964). The jury charge on perfect self-defense benefitted appellant. The trial court granted a request for a jury charge on defense of a third person. Therefore, that point, although apparently asserted now as not included in the jury charge, is not well taken. The point of error is overruled.

Appellant, in point of error fourteen, refers the court to numerous rulings of the trial court on objections by both parties throughout the trial. He characterizes the rulings as *oral instructions* amounting to a comment on the weight of the evidence. The objection on appeal was not raised at trial. Moreover, we find these were not oral instructions to the jury which are prohibited by TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon 1981).

He secondly argues the rulings on groundless objections by the State and valid objections by him amounted to a comment on the weight of the evidence and deprived him of a fair trial. We have examined the record and find the rulings to

be the ordinary ones of a trial court in the course of a trial. They are not comments on the weight of the evidence any more than the rulings of a trial court in any other case. The point is without merit.

 In this case each juror was given a copy of the jury charge. A typographical error in names was called to the court's attention by appellant, and one in paragraph XIV (whether discovered by the State is unclear), which instructs the jury on finding in their verdict the use of a deadly weapon. In that instruction the words "the lesser included offense of Voluntary Manslaughter" were omitted. The court told the jury they could make the "notations" on their copies so they could "follow along with the Presiding Juror" in the jury room. We note two matters: there was no challenge to the *original* and *official* jury charge given to the Presiding Juror to be used in the jury room. Second, there was no objection to the trial court's method of alerting the other jurors to changes. In fact, appellant called the court's attention to one of them and suggested the method used. "... I'm going to request [the court] re-read it again; and then we call their [the jury's] attention or give them corrected copies ..." The court asked, "The entire charge?" The answer by appellant: "No, just that paragraph, maybe correct it on their copies." There was no objection when the court corrected both paragraphs by this method. We do not agree this was fundamental error. Point of error fifteen is overruled.

 The trial court deleted the words, "cause the death" from the indictment in this case. The words had been typed twice, repeating the phrase unnecessarily. The action followed the State's motion to strike the unnecessary words. We are aware of TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon Pamph.1986) which generally prohibits amendments except under certain conditions. However, this deletion of unnecessary words in the present case is not such an amendment as contemplated by that statute. The deletion neither altered or amended the substance of the indictment. We consider the repetitive words to be mere surplusage. In *Collins v. State,*

500 S.W.2d 168, 169 (Tex.Crim.App.1973) the court wrote:

> When not descriptive of that which is legally essential to the validity of an indictment or information, unnecessary words may be rejected as surplusage. (Citations omitted)

The unnecessary words "cause the death," repeated the second time in the present indictment, may be considered surplusage. The point of error that the trial court acted wrongly is overruled.

By point of error seventeen appellant claims the prosecution deprived him of a fair trial by not making available to him certain exculpatory evidence: a butcher knife located at the scene; the criminal record of the deceased; the criminal record of the witness, Jaime Martinez. At the pre-trial hearing in December, 1984, the trial court granted the first one (weapons) and ordered the evidence be made available. The prosecutor agreed, and at several points during the hearing indicated the file of the district attorney's office was available for defense counsel's inspection. Also it was stated that the State would make an appointment "so he can go [sic] the Laredo Police Department" to examine property in possession of the police. Although this statement was made in connection with other [discovery motion] items in possession of the police, the conclusion is that appellant could have seen all the property, including the knife, at the same time if he so desired.

The court partially granted discovery of the other matter and ordered the information to be made available *at trial at the time it arose.* There was no further discussion or objection as to discovery of the criminal records.

 During trial appellant contended that the State had failed to produce the exculpatory evidence. The prosecutor responded by stating that the State's file was open for appellant to see, and no effort had been made to come to the office where discovery had been available for many months. Moreover, it was the State which introduced the butcher knife in evidence and established it had been in the property

room of the Laredo Police Department since shortly after the event in May 1983, until the trial in November 1985, and that the officer had dusted it for prints and found no "good" ones. Further, the officer said there was no blood on it. Appellant stated, "No objection," to its admission. We hold there was no failure to disclose discovery of the knife under these circumstances. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The point is overruled.

In his last point of error appellant contends that fundamental error resulted when the jury charge mentioned "good time" credit relative to TEX.CODE CRIM. PROC.ANN. art. 37.07, § 4(a), *supra.* He relies upon TEX.CODE CRIM.PROC.ANN. art. 42.12, § 15(b) and argues that statute prohibits appellant's eligibility to receive good time credit (because of the finding of use of a deadly weapon). We note the Legislature deleted section 15(b) from the statute, Acts 1985, 69th Leg., p. 2896, ch. 427, eff. Sept. 1, 1985, prior to the instant trial. *See* art. 42.18, § 8(b). No argument is advanced how that submission of the jury charge was fundamental error. Point of error eighteen is overruled.

The judgment is affirmed.