**Lawrence Earl COOK, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–90–01378–CR.

Court of Appeals of Texas,
Dallas.

Feb. 24, 1992.

Fred Tinsley, Dallas, for appellant.

Teresa Toole, Dallas, for appellee.

Before KINKEADE, MALONEY and KAPLAN [1], JJ.

## OPINION

KAPLAN, Justice.

The State charged Lawrence Earl Cook with murder. A jury convicted him of the lesser included offense of voluntary manslaughter. The jury assessed punishment at twenty years' confinement and a fine of $5000. Cook appeals, asserting two points of error about the charge given to the jury. We overrule both points of error and affirm the judgment of the trial court.

In his first point of error, appellant argues that the trial court erred in refusing to submit to the jury his requested special instruction limiting the application portion of the charge to the result of his conduct. The requested instruction read as follows:

> You are further instructed that an intent to kill is an essential element of murder in this case. Therefore, although you may believe from the evidence beyond a reasonable doubt that the defendant did kill Michael Williams by stabbing him with a knife, a deadly weapon, yet and until you further find and believe from the evidence beyond a reasonable doubt that in so doing the defendant then and there had the intent to kill the said

**1.** The Honorable Jeff Kaplan succeeded the *Honorable* Gordon Rowe, a member of the original panel, upon Justice Rowe's resignation.

Justice Kaplan has reviewed the briefs and the record before the Court.

Michael Williams, then you cannot convict him of murder.

And if you do not so believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, to the existence of such intent on the part of the defendant, then you will acquit him of murder.

The trial court refused to submit the instruction.

Appellant was charged with murder under section 19.02(a)(1) of the Penal Code, which provides that "[a] person commits an offense if he intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989). Appellant notes that the Court of Criminal Appeals has stated that murder under section 19.02(a)(1) is a "result" type of crime. *Lugo–Lugo v. State,* 650 S.W.2d 72, 80 (Tex.Crim.App.1983) (op. on reh'g). Appellant contends that, because murder is a result-oriented crime, the jury had to find that he intended to kill when he committed the offense. Appellant further contends that the fact that he was convicted of the lesser included offense of voluntary manslaughter does not alleviate the asserted error. He states that the jury's verdict simply indicates the jury's belief that sudden passion existed. According to appellant, the verdict still was improper because the charge did not limit the culpable mental state to the result of his conduct.

■ As acknowledged by appellant, his special requested charge was an application charge designed to apply the law to the facts. The application charge actually given to the jury read as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 27th day of July, 1990 in Dallas County, Texas, the defendant, LAWRENCE EARL COOK, did *intentionally or knowingly cause the death* of MICHAEL WILLIAMS, an individual, by stabbing MICHAEL WILLIAMS with a knife, a deadly weapon, as alleged in the indictment, and that the defendant, in so acting, was not acting under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of murder.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of murder.

If you find from the evidence beyond a reasonable doubt that on or about the 27th day of July, 1990 in Dallas County, Texas, the defendant, LAWRENCE EARL COOK, did *intentionally or knowingly cause the death* of MICHAEL WILLIAMS, an individual, by stabbing MICHAEL WILLIAMS with a knife, a deadly weapon, as alleged in the indictment, but you further find from all the facts and circumstances in evidence in the case that the defendant, in killing MICHAEL WILLIAMS, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, or if you have a reasonable doubt as to whether he so acted under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of voluntary manslaughter.

Unless you so find beyond a reasonable doubt that the defendant is guilty of voluntary manslaughter under the instructions given you, or if you have a reasonable doubt thereof, you will acquit the defendant of voluntary manslaughter.

If you find from the evidence beyond a reasonable doubt that the defendant is guilty of either murder or voluntary manslaughter, but you have a reasonable doubt as to which offense he is guilty [of], then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of voluntary manslaughter.

You are further instructed that before a person can be guilty of murder or voluntary manslaughter under the indictment, *he must have intentionally or knowingly caused the death of the deceased.* Unless you so find beyond a reasonable doubt that the defendant is guilty of murder or voluntary manslaughter, or if you have a reasonable doubt thereof, you will find the defen-

dant not guilty and so state by your verdict.

(Emphasis added.)

We determine that the trial court did not err in refusing appellant's requested special instruction because the charge as given was legally correct. The charge as given correctly attached the required culpable mental states of "intentionally" or "knowingly" to the result, namely causing death. According to the Court of Criminal Appeals, murder under section 19.02(a)(1) "is committed when the conscious objective or desire of the perpetrator was to cause death or where the perpetrator was aware that his conduct was reasonably certain to cause death." *Lugo–Lugo*, 650 S.W.2d at 80; *see* TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974). Thus, "[w]hen the culpable mental states of intentionally and knowingly are attached to the result of death, criminal homicide then possesses the basic characteristics of its family required by [the Penal Code]." *Lugo–Lugo*, 650 S.W.2d at 80.

The charge in this case required the jury to find that appellant "intentionally or knowingly cause[d] the death" of the victim in order to convict appellant of murder or voluntary manslaughter. This requirement was reiterated when the jury was instructed "that before a person can be guilty of murder or voluntary manslaughter under the indictment, he must have intentionally or knowingly caused the death of the deceased." The culpable mental states (intentionally or knowingly) were properly attached to the result of the crime (causing death).

The law requires no more than what was supplied by the charge actually given in this case. The submitted charge properly indicated the importance of the culpable mental state with respect to causing death, the result of the crime. Because the charge as given was legally correct, the trial court did not err in refusing to submit appellant's requested charge. *See Berlanga v. State*, 696 S.W.2d 425, 428 (Tex. App.—San Antonio 1985, no pet.).

■ Furthermore, the charge submitted by appellant is legally incorrect because it does not inform the jury that appellant could be convicted of murder if he acted "knowingly" rather than "intentionally." Appellant's requested charge requires the jury to find that appellant had the intent to kill (or cause death) in order to convict. As mentioned previously, appellant was charged with murder under section 19.02(a)(1) of the Penal Code, which describes the offense as intentionally *or knowingly* causing the death of an individual. TEX. PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989). Thus, applying the applicable statutory definitions of the two alternative culpable mental states, murder under this particular provision is committed "when the conscious objective or desire of the perpetrator was to cause death *or where the perpetrator was aware that his conduct was reasonably certain to cause death.*" *Lugo–Lugo*, 650 S.W.2d at 80 (emphasis added); *see* TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974).

■ Appellant's requested charge, by failing to inform the jury that appellant could be convicted if he was aware that his conduct was reasonably certain to cause death, omitted the alternative culpable mental state of *knowingly* causing death. By requiring *intent* to kill, appellant's charge authorized conviction *only* if the jury found that appellant *intentionally* caused death, whereas the applicable statute also authorizes conviction if appellant *knowingly* caused death. No error is committed when a trial court refuses a requested instruction that misstates the law. *Perez v. State*, 590 S.W.2d 474, 480 (Tex.Crim. App. [Panel Op.] 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2157, 64 L.Ed.2d 790 (1980). We overrule the first point of error.

In his second point of error, appellant maintains that the trial court erred in refusing to limit the definitions of the culpable mental states to the result of appellant's conduct. Appellant notes that the Penal Code defines "intentionally" and "knowingly" with respect to both conduct and the result of conduct:

(a) A person acts intentionally, or with intent, with respect to the nature of his

conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974). Appellant argues that the trial court should have granted his request that only the definitions respecting the *result* of conduct be given to the jury. The trial court denied this request and submitted the definitions as quoted above in their entirety.

Appellant relies on *Haggins v. State,* 785 S.W.2d 827 (Tex.Crim.App.1990). In *Haggins,* the defendant was convicted of injury to a child. Like appellant in the instant case, Haggins asked the trial court to limit the definition of the culpable mental state to the result of his conduct, but the trial court denied the request. The Court of Criminal Appeals noted that it had previously held that the injury-to-a-child statute focuses on the result of the accused's conduct, not the nature of his conduct. *Id.* at 828. Without referring to the application portion of the charge, the court held that the trial court's denial of Haggins's re-

quested limitation was error and remanded the case for a harm analysis. *Id.*[2]

However, in capital murder cases, the Court of Criminal Appeals has held that the definition of a culpable mental state must be examined in the context in which the defined term appears and not limited to portions of the charge standing alone. *Turner v. State,* 805 S.W.2d 423, 430 (Tex. Crim.App.1991); *Kinnamon v. State,* 791 S.W.2d 84, 87 (Tex.Crim.App.1990). In both cases, the court stated that the definitional portion of the charge was limited by the application portion of the charge, which required the jury to find that the defendant had "intentionally cause[d] the death of [the victim] by shooting [the victim] with a gun." *Turner,* 805 S.W.2d at 431; *Kinnamon,* 791 S.W.2d at 88, 89. Because of the quoted language in the application paragraphs, the court held that the failure to limit the definitional portion of the charge was not reversible error. *Turner,* 805 S.W.2d at 431; *Kinnamon,* 791 S.W.2d at 89. The substantive language relied on by the Court of Criminal Appeals in the application paragraphs is virtually identical to the language in the application paragraph in the instant case.[3]

Various courts of appeals, including this Court, have applied the teachings of *Turner* and *Kinnamon* by examining the application portions of the jury charge to determine whether the abstract definitions of culpable mental states are properly applied to the facts of the case. *See Davis v. State,* 822 S.W.2d 207, 212 (Tex.App.—Dal-

---

**2.** Appellant also relies on *Kelly v. State,* 748 S.W.2d 236 (Tex.Crim.App.1988). In *Kelly,* the defendant was convicted of injury to an elderly individual, another result-oriented offense. Although the Court of Criminal Appeals noted that the trial court gave abstract definitions of the culpable mental states with respect to both conduct and result, Kelly's complaint apparently was directed to the application portion of the charge, not to the abstract definitions; his point of error concerned the trial court's denial of Kelly's requested application charge instructing the jury that it had to find that Kelly had the required culpable mental state with respect to the result of his conduct. *See id.* at 238 & n. 2. The Court of Criminal Appeals held that the failure to submit Kelly's requested charge was error and remanded for a harm analysis. *Id.* at 239.

Because *Kelly,* unlike *Haggins,* did not involve a complaint about the abstract definition of the culpable mental state, it does not directly support appellant's position. We readily acknowledge that *Kelly* is instructive because it also deals with a result-oriented offense. However, as discussed in the body of this opinion, we conclude that other cases are dispositive.

**3.** "Knowingly" was not a factor in the capital murder cases under consideration in *Turner* and *Kinnamon.* Since "intentionally" is the *only* culpable mental state applied to capital murder under section 19.03(a)(2), appellant's requested instruction would have been legally correct *if* he had been charged under that statute. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1989).

las, Dec. 11, 1991, no pet. h.); *Schumacher v. State,* 814 S.W.2d 871, 873–74 (Tex. App.—Austin 1991, no pet.); *Leal v. State,* 800 S.W.2d 346, 347–48 (Tex.App.—Corpus Christi 1990, pet. ref'd). *Davis* and *Leal* are directly on point because both involved charges of murder under section 19.02(a)(1) of the Penal Code, and both involved consideration of the same complaint about the definitional portion of the charge as the complaint raised in this case. In both cases, the application portion of the charge given to the jury was substantively identical to the application charge given in this case, and both courts held that there was no reversible error stemming from the abstract definitions of "knowingly" and "intentionally" because the application portion of the charge correctly applied the culpable mental states to the facts of the case. *Davis,* 822 S.W.2d at 212; *Leal,* 800 S.W.2d at 347–48.

■ Because *Kinnamon* and its progeny require us to view the abstract definitions of the culpable mental states in light of the application language with respect to those culpable mental states, and because *Haggins* did not involve examination of the application portion of the charge, we view the *Kinnamon* line of cases as controlling. Based on *Kinnamon* and its progeny, we hold that the trial court did not commit reversible error in failing to limit the abstract definitions of the culpable mental states.[4]

Moreover, murder under section 19.02(a)(1), although a result-oriented offense, is not concerned *only* with the result of the actor's conduct. In order to prove murder under this statutory provision, the State must show that the accused intentionally or knowingly engaged in the *conduct* that caused death *and* intended or knew that death would *result* from the conduct. *Martinez v. State,* 763 S.W.2d 413, 419 (Tex.Crim.App.1988); *Leal,* 800 S.W.2d at 348; *see also Turner,* 805 S.W.2d at 430; *Kinnamon,* 791 S.W.2d at 88–89 (both

*Turner* and *Kinnamon* stating, in the context of capital murder under section 19.03(a)(2), that a conviction requires proof that the defendant intended to engage in the *conduct* that caused death as well as intending that death result from that conduct). Thus, under section 19.02(a)(1), the culpable mental states of knowingly or intentionally must be applied to *both* the conduct and the result of the conduct. It would therefore be error to limit the abstract definitions of the culpable mental states to the result alone, as appellant requested. *See Perez,* 590 S.W.2d at 480. We overrule the second point of error.

We affirm the judgment of the trial court.

---

4. We recognize that an earlier opinion of this Court, *Sneed v. State,* 803 S.W.2d 833 (Tex. App.—Dallas, 1991, pet. ref'd), reached a different result. *Sneed* did not rely on *Kinnamon* to reach its holding. We believe that the true effect of *Kinnamon* could not be determined until the Court of Criminal Appeals issued its opinion in *Turner* and that *Turner* effectively overrules *Sneed.*