**Paul MARTINEZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–91–00443, 05–91–00444–CR.**

Court of Appeals of Texas,
Dallas.

May 11, 1992.

Discretionary Review Refused
Sept. 30, 1992.

R.D. Rucker, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before ENOCH, C.J., and ASHWORTH [1] and DIAL,[2] JJ.

## OPINION

ENOCH, Chief Justice.

Paul Martinez, Jr. appeals his conviction in a jury trial of the offenses of attempted voluntary manslaughter and murder. The jury assessed punishment at five years'

confinement and forty years' confinement, respectively. On appeal, appellant asserts that: (1) the trial court abused its discretion in failing to dismiss the venire panel; (2) the trial court erred in overruling appellant's objection to the prosecutor's jury argument; (3) the trial court erred in admitting the autopsy report over his objection; (4) the charge given to the jury during the guilt-innocence phase was fundamentally defective; and (5) the evidence was insufficient to support his convictions. In a crosspoint, the State requests that the judgment for the murder conviction be reformed to show the jury's affirmative deadly weapon finding. We overrule appellant's points, sustain the State's crosspoint, affirm the judgment for the attempted voluntary manslaughter conviction, reform the judgment for the murder conviction and as reformed, affirm.

The record shows that appellant and his brother, Robert Martinez, were tried jointly. Robert Martinez was acquitted, and appellant was convicted for the attempted voluntary manslaughter of Alfonso Posada and for the murder of Steve Solis. Posada testified at trial that he, his brother, and Solis left the Ladies Choice Club on December 8, 1990 at about 2:00 a.m. Two men approached them in the parking lot and one of the men shot him in the head. A patron and a bartender testified that they saw a fight in the parking lot and heard shots. The bartender identified appellant as the man with the gun. A police officer was called to the scene. The officer testified that he stopped an automobile leaving just after the shooting. Appellant exited the passenger side of the automobile, began running, and threw a gun over a fence. Appellant was arrested and the gun was retrieved. Robert Martinez testified that he and Alfonso Posada were involved in a physical fight on December 8, 1990. He stated that he heard a shot and saw his brother, Paul, getting ready to fight with Steve Solis. He did not know that his

1. The Honorable Clyde R. Ashworth, Justice, Court of Appeals, Second District of Texas at Fort Worth, Retired, sitting by assignment.

2. The Honorable Preston H. Dial, Jr., Justice, Court of Appeals, Fourth District of Texas at San Antonio, Retired, sitting by assignment.

brother had a gun. Robert Martinez was driving the car when a police officer stopped him. His brother jumped out of the car and took off running. Appellant did not testify.

## PROSECUTOR'S COMMENT DURING VOIR DIRE OF JURY PANEL

In his first point of error, appellant asserts that the trial court abused its discretion in failing to dismiss the venire panel after the prosecutor made a harmful and improper comment. The relevant portion of the record is as follows:

[PROSECUTOR]: Because the Defendants do not have to prove anything here, because the State has the burden of proof, they cannot be required to testify. The Judge can't make them testify, their own attorneys can't, their mamas can't, the prosecutors can't. And, if they fail to testify here, you cannot read anything into that. You cannot infer their guilt from their failure to testify. You must look solely to the State to prove their guilt. Now, if they do testify, of course you can examine their testimony under a magnifying glass. Now, human nature—that's what the law tells us you have to do. And, it's human nature to want to know both sides of an issue before you decide it. We know that. You might say to yourself, "heck, if I was in there, I would testify." But you have to—

[CODEFENDANT'S COUNSEL]: I'm going to object [to] this line of Voir Dire as a comment on Defendant's failure to testify.

THE COURT: Well, I will sustain the objection. Let me just tell the jury panel this: Let's go back to our high school civics. You know, we have the Constitution of the United States and the first ten amendments are called the Bill of Rights. Well, the Fifth Amendment is the amendment against self incrimination and by law, in an American courtroom, no defendant in a criminal proceeding can be required to testify. And, that's the law and you're going to be instructed of that. If he doesn't testify, that can't be considered against him for any reason. And

a lot of people have a difficult time with that. But, if you're going to serve on this jury, you have to be able to say, that you will not hold it against any defendant, if he doesn't testify. That's all it is. So let's just go on from there gentlemen, please.

[CODEFENDANT'S COUNSEL]: Your Honor, I believe due to Mr. Nelms prior statement, that we would ask the panel be discharged.

THE COURT: Overruled.

[CODEFENDANT'S COUNSEL]: Note my exception.

■ Generally, if a codefendant has not voiced his own personal objection, he is foreclosed from relying on the objection of his codefendant to preserve error. *See Lerma v. State,* 679 S.W.2d 488, 498 (Tex. Crim.App.1982). A defendant may adopt an objection made by a codefendant and, thus, preserve error when there is sufficient indication in the record of his intent to adopt the objection. *See Woerner v. State,* 576 S.W.2d 85, 86 (Tex.Crim.App.1979). In this case, the counsel for the defendant, Paul Martinez, Jr., remained silent after the prosecutor's comment. Due to this silence, the trial court was only given the opportunity to rule on the prosecutor's statement as it applied to the codefendant, Robert Martinez. Further, the record shows no indication that the defendant intended to adopt any of the codefendant's objections. We find that appellant failed to preserve error and, accordingly, overrule his first point.

## PROSECUTOR'S JURY ARGUMENT FOLLOWING THE PUNISHMENT PHASE

In his second point of error, appellant asserts that the trial court erred in overruling his objection to the prosecutor's jury argument following the punishment phase of the trial. He contends that the argument was improper because it was not based on the evidence and was inflammatory and prejudicial. The relevant portion of the record is as follows:

[PROSECUTOR]: * * * Now, Paul Martinez is probably sorry, as he's sitting here today, I suggest. But, do you think he's sorry he shot Steve Solis? I doubt it. I suggest, no. The only thing he's sorry about, I submit to you, is that he's sorry he got caught. He's sorry that he's being put through this inconvenience [sic]. He's sorry he didn't turn around and shoot Officer Fuentes, then he probably wouldn't have to be here today.

[DEFENDANT'S COUNSEL]: Your Honor, I'm going to object to him imputing to my defendant, that he's sorry that he didn't shoot a police officer. That's not a proper argument. That's inflammatory and prejudicial.

THE COURT: Well, the jury is instructed to remember the testimony as they heard it.

[DEFENDANT'S COUNSEL]: May I have a ruling on my objection?

THE COURT: I'll overrule the objection.

The State responds that the trial objection fails to comport with appellant's point of error on appeal and, alternatively, that the prosecutor's comment was invited in response to the defense counsel's jury argument that appellant did not have a violent past and was a good family man. The State also contends that there was sufficient evidence in the record to support the comment. We first address whether appellant properly preserved error.

■ Appellant's objection to the prosecutor's comment was based on grounds that it was an improper argument and inflammatory and prejudicial. Texas courts often hold that an objection made on the basis that an argument comprises an improper comment or argument is insufficient to preserve error because it is too general in nature. *E.g., Huggins v. State,* 795 S.W.2d 909, 912 (Tex.App.—Beaumont 1990, pet. ref'd); *Meek v. State,* 628 S.W.2d 543, 546 (Tex.App.—Fort Worth 1982, pet. ref'd). An exception exists, however, under circumstances reflecting that the trial judge and prosecutor are aware of the substance of the objection. *Burdine v. State,* 719 S.W.2d 309, 319 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590,

94 L.Ed.2d 779 (1987). Then, a general objection will not waive the defendant's complaint for purposes of appellate review. *Id.*

■ In *Everett v. State,* the Texas Court of Criminal Appeals held that an objection on the ground that an argument was "improper" sufficiently preserved error for appellate review. *Everett v. State,* 707 S.W.2d 638, 641 (Tex.Crim.App.1986). The Court explained:

The very nature of the prosecutor's argument coupled with defense counsel's objection informed the court of the nature of the error. This is evidenced by the admonitions the trial court gave the prosecutor after overruling defense counsel's objection: "Just argue the evidence in this phase of the Hearing (sic)." In this instance we find appellant's objection to be sufficient.

*Id.* In *Everett,* as in this case, the prosecutor's argument placed evidence before the jury that was outside the record. *See id.* That the trial court was apprised of the nature of the error is evidenced in its comment: "Well, the jury is instructed to remember the testimony as they heard it." We find that the alleged error has been sufficiently preserved on this point.

■ Proper jury argument falls into one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to defendant's argument; or (4) a plea for law enforcement. *Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex.Crim.App.1990). The State argues that the prosecutor's comment is a reasonable deduction from the evidence because Officer Fuentes testified that when he was apprehending appellant, appellant took his gun out from under his shirt and "looks at me and he looks at the gun and, I'm giving him commands with my gun to drop the gun, and, then he decides to throw the gun over a fence...." The officer further testified that Appellant approached him unarmed and the officer returned his own gun to its holster. Appellant then "slipped away." A bystander tackled appellant and the officer handcuffed him. Based upon this testimony, we

cannot agree that the prosecutor's comment: "He's sorry he didn't turn around and shoot Officer Fuentes," is a reasonable deduction. In addition, we cannot agree with that the prosecutor's comment constitutes a response to the argument made by appellant's counsel that appellant "did not have a violent past and was a good family man and that the jury should look at what [Martinez] had done in the past to project what he might do in the future." Appellee's Brief at 25. We conclude that the trial court erred by not sustaining appellant's objection.

We must now decide whether the error is reversible or harmless by tracing the impact, if any, of the error on the jury. *Madden v. State*, 799 S.W.2d 683, 700 (Tex.Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). In our analysis, we must examine (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the prosecutor; (4) its probable collateral implications; (5) how much weight the jury would probably place upon the error; and (6) whether declaring the error harmless in this case would encourage the State to repeat it with impunity. *Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim.App.1990).

The punishment phase of the trial consisted of testimony from appellant's mother in which she described her son as a worker who helps support her as well as his own family. Appellant's aunt testified that she was close to appellant and described him as a supporter of his family. Appellant's counsel then gave a jury argument discussing appellant's prior criminal history, his family background, and his family responsibilities in conjunction with the range of punishment, which was from five to ninety-nine years for the murder conviction. He told the jury that there was no evidence that appellant was violent, dangerous, or that he carried guns around. He concluded that because appellant was drunk and mad and killed someone did not warrant the imposition of a life sentence.

The prosecutor's jury argument began with a statement that he was disappointed with the verdict the jury had rendered. He stated that appellant was solely responsible for killing Steve Solis, appellant deserved a life sentence for the way he killed him in cold blood, and because he killed once, "he is going to kill again." The prosecutor argued that the sentence given would indicate the worth of Solis' life. He stated that appellant was not sorry he killed Solis, but sorry he did not shoot Officer Fuentes. This statement was objected to, but overruled. Then the prosecutor stated that he could not think of a worse fact situation than the shooting of Solis three times while Solis begged for his life. This statement was also objected to, but overruled. Finally, the prosecutor stated that a better way to die would be in bed surrounded by loved ones. He reiterated his belief that appellant would kill again and asked the jury to send a message that "[w]hen you kill somebody in cold blood in Dallas County, you get a sentence of life." The jury was then retired.

Under the facts of this case, we conclude beyond a reasonable doubt that the prosecutor's improper comment did not contribute to the jury's assessment of punishment of five years' confinement for the offense of attempted voluntary manslaughter and forty years' confinement for murder. *See* Tex.R.App.P. 81(b)(2). Even though the objection to the prosecutor's improper comment was overruled, the prosecutor completely abandoned this argument. The comment was made in passing and not emphasized or reinforced, therefore, the probable impact of the error on the jury was minimal, if any. *See Orona*, 791 S.W.2d at 130; *Harris*, 790 S.W.2d at 588. The jury assessed terms of confinement well below the maximum ranges allowed by the Penal Code. *See* Tex.Penal Code Ann. §§ 12.32, 12.33 (Vernon 1974) (ninety-nine years and twenty years, respectively). Under the facts of this case, we do not believe that the State will repeat this type of error with impunity. Further, we conclude, in light of the entire record, that the argument was not so extreme or manifestly improper or

injected new and harmful facts into the case so as to deprive the defendant of a fair and impartial trial. *McGee v. State*, 774 S.W.2d 229, 238 (Tex.Crim.App.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990); *Phillips v. State*, 701 S.W.2d 875, 892 (Tex.Crim.App.1985), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986). We overrule appellant's second point of error.

## ADMISSIBILITY OF THE AUTOPSY REPORT

■■■ In his third point of error in his appeal of the murder conviction, appellant asserts that the trial court erred in admitting the autopsy report over his objection on grounds of hearsay and that the sponsoring witness did not take part in the autopsy. A sponsoring witness is not required to take part in the autopsy in order to admit an autopsy report into evidence. *See DeBolt v. State*, 604 S.W.2d 164, 166 (Tex.Crim.App. [Panel Op.] 1980). An autopsy report may be properly admitted into evidence as a business record or public record. *Id.; see also Vasquez v. State*, 814 S.W.2d 773, 776 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). In this case, Dr. Charles Odum testified that he supervised the pathologist who performed the autopsy of Steve Solis. Dr. Odum signed the autopsy report and concurred in its findings. By statute, autopsy reports are considered public records. Tex.Code Crim.Proc.Ann. art. 49.25, § 11 (Vernon 1979). An autopsy report containing the medical examiner's findings and conclusions following an autopsy possesses sufficient trustworthiness to be admitted into evidence despite the absence of the medical examiner who actually performed the autopsy. *Manocchio v. Moran*, 919 F.2d 770, 784 (1st Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). We conclude that the record reflects sufficient predicate for admission of the autopsy report as a public record. *See* Tex.R.Crim.Evid. 803(8). We overrule appellant's third point of error.

## THE JURY CHARGE

■■■ In his third point in his appeal of the attempted voluntary manslaughter con-

viction and fourth point in his appeal of the murder conviction, appellant contends that the court's charge in the guilt-innocence phase was fundamentally defective by failing to limit the definitions of the terms "knowingly" and "intentionally" to the result of the conduct. He argues that attempted voluntary manslaughter and murder are result-oriented crimes and the charge failed to focus on the mental state of appellant as to the result of his conduct. He concedes that he failed to object to the court's charge at trial, but asserts that he was egregiously harmed by the error so as to warrant a reversal. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

The charge contained the statutory definitions of "knowingly" and "intentionally." *See* Tex.Penal Code Ann. § 6.03(a), (b) (Vernon 1974). The application paragraphs provided in part:

> Now, if you find from the evidence beyond a reasonable doubt that ... Paul Martinez, Jr., acting either alone or as a party, as that term has heretofore been defined, did then and there, with specific intent to commit the offense of murder, *attempted to cause the death* of Alfonso Posada, an individual, *by knowingly or intentionally shooting* the said Alfonso Posada with a firearm, a deadly weapon, if he did, and said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended, but you further find that he did so under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of the offense of attempted voluntary manslaughter....

> \* \* \* \* \* \*

> Now, if you find from the evidence beyond a reasonable doubt that ... Paul Martinez, Jr., acting either alone or as a party, as that term has been heretofore defined, did then and there, *knowingly or intentionally cause the death* of Steve Edward Solis, an individual, by shooting Steve Edward Solis with a firearm, a deadly weapon, and that the de-

fendant, in so acting was not acting under the immediate influence of a sudden passion arising from an adequate cause, then you will find the defendant guilty of murder....

(Emphasis added).

 Murder is a result-oriented crime committed when the conscious objective or desire of the perpetrator is to cause death or when the perpetrator is aware that his conduct is reasonably certain to cause death. *Lugo–Lugo v. State*, 650 S.W.2d 72, 80 (Tex.Crim.App.1983). When the culpable mental states of "intentionally" and "knowingly" are attached to the result of death, criminal homicide [3] possesses the basic characteristics of its family as required by the Texas Penal Code. *Id.* The charge in this case required the jury to find that appellant attempted to cause the death of Alfonso Posada by knowingly or intentionally shooting him and that appellant knowingly or intentionally caused the death of Steve Solis. The culpable mental states of knowingly or intentionally were properly attached to the result of the crimes of attempting to cause death and causing death. *See Cook v. State*, 827 S.W.2d 426, 428 (Tex.App.—Dallas pet. filed). We find that the charge as given was legally correct.

In support of his points, appellant cites *Sneed v. State*, 803 S.W.2d 833, 836 (Tex.App.—Dallas 1991, pet. ref'd). Recently in *Cook v. State*, we stated that our decision in *Sneed* did not rely on *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Crim.App.1990), and *Turner v. State*, 805 S.W.2d 423 (Tex.Crim.App.1991), *cert denied*, — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). *Cook*, at 430 & n. 4. In view of *Kinnamon* and *Turner*, we held that "the trial court did not commit reversible error in failing to limit the abstract definitions of the culpable mental states." *Id.* at 430. In reaching that holding, we examined the application portions of the charge to determine whether the abstract definitions of culpable mental states were properly applied to the facts of the case. *Id.* at 429.

In the present case, we have already found that the culpable mental states of knowingly or intentionally were properly attached to the result of the crimes of attempting to cause death and causing death in the application paragraphs. Accordingly, we hold that the charge was not fundamentally defective and overrule appellant's points.

## SUFFICIENCY OF THE EVIDENCE

In his fourth point of error in his appeal of the attempted voluntary manslaughter conviction, appellant asserts that the evidence is insufficient to prove that his conscious desire or objective was that Alfonso Posada's death should result from the shooting. He directs our attention to Robert Martinez's testimony that Alfonso Posada struck Robert Martinez in the parking lot and called him a punk. While Robert Martinez was on the ground from the blow, he heard a gunshot. He got up and saw his brother, Paul, engaged in an argument with Steve Solis. Both men had their hands up as if ready to fight and were pushing each other and cussing at each other. Robert Martinez then went back to his car and heard more shots.

Appellant also directs us to Maria Banda's testimony. She stated that she was Robert Martinez's companion on the night of the shooting. She saw Solis pushing appellant in the parking lot at the same time that she heard a shot. She stated that everyone seemed to be upset that night.

 In determining the sufficiency of the evidence, this court's inquiry is limited to determining whether, evaluating the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Turner*, 805 S.W.2d at 427. If the State's evidence supports an inference other than a finding of the essential elements of an offense, the trier of fact could not rationally find the accused guilty beyond a reasonable doubt. *Carlsen v. State*, 654 S.W.2d 444, 449–50 (Tex.Crim.App.1983) (op. on

---

**3.** "Criminal homicide is murder, capital murder, voluntary manslaughter, involuntary man-

slaughter, or criminally negligent homicide." Tᴇx.Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 19.01(b) (Vernon 1989).

reh'g).[4] This does not mean that if some of the evidence at trial suggests innocence, the jury cannot find a defendant guilty. *Castro v. State*, No. 835–90, slip op. at 3, 1992 WL 1131 (Tex.Crim.App. January 8, 1992). The jury, as trier of fact, is the sole judge of witnesses' credibility and is free to believe or reject all or any part of the testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984).

A person commits voluntary manslaughter if he "intentionally or knowingly causes the death of an individual," except the death is caused under the immediate influence of sudden passion arising from an adequate cause. TEX.PENAL CODE ANN. §§ 19.02(a)(1), 19.04(a) (Vernon 1989). A criminal attempt is committed if a person, with specific intent to commit an offense, does an act amounting to more than mere preparation that tends but fails to effect the commission of the intended offense. TEX.PENAL CODE ANN. § 15.01(a) (Vernon 1974). The Texas Penal Code provides:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX.PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974). Intent and knowledge can be inferred from acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982); *Brown v. State*, 704 S.W.2d 506, 507 (Tex. App.—Dallas 1986, pet. ref'd). The intent

or knowledge of the accused may be ascertained or inferred from the methods used and the wounds inflicted. *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App. [Panel Op.] 1981). A jury may find the specific intent to kill from circumstances surrounding the use of a weapon. *Cordova v. State*, 698 S.W.2d 107, 110–12 (Tex. Crim.App.1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986); *Lewis v. State*, 486 S.W.2d 104, 106 (Tex. Crim.App.1972).

In this case, Alfonso Posada testified that he, his brother, Rolando, and Steve Solis left the Ladies Choice Club at about 2:00 a.m. In the parking lot, two men appeared and one of them started pushing Solis. Alfonso Posada reached to grab Solis and was shot. He described the man that was pushing Solis as wearing a checked flannel shirt. The other man was wearing a solid sweater and sweat pants. One of the men had a chrome pistol. Andrew Vazquez testified that he was at the Ladies Choice Club on the night of the shooting. At about 2:00 a.m., he heard an argument in the parking lot. He heard a gunshot, and then saw Posada with blood on his face. He saw a hispanic male wearing a flannel shirt pushing Solis. Another hispanic man wearing a gray sweater had a goatee and was carrying a chrome pistol. Vazquez then observed both males hitting Solis. More shots were fired and Vazquez then saw Solis lying on the ground. Dante Soriano was a bartender at Ladies Choice Club that night. He saw two hispanic males in the parking lot. One was wearing a checked shirt. The man wearing a gray sweater had a gun. Soriano identified these men as the two defendants. Appellant was the gunman. Rolando Posada testified that he was with Alfonso and Solis on December 8, 1990. While helping his brother after he was shot, Rolando Posada saw Solis with his hands stretched out trying to keep two men from touching him. Officer Fuentes testified that a citizen at

---

4. Recently, the Court of Criminal Appeals overruled *Carlsen* and eliminated the reasonable hypothesis appellate construct for determining sufficiency of the evidence points. *Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex.Crim.App.1991).

The holding in *Geesa*, however, applies only to cases tried after November 6, 1991. *Id.* at 165. Since the trial in this case commenced on March 18, 1991, we are bound to use the reasonable hypothesis construct.

the Ladies Choice Club informed him of the shooting. He apprehended appellant after appellant sprinted from the passenger side of a car. He observed appellant with a gun and saw him throw the gun over a fence. Charles Linch, a trace evidence analyst, testified that he analyzed handwipings from appellant, Robert Martinez, and Steve Solis. He found that appellant's handwipings obtained from both his left and right hands were consistent with having discharged or picked up a weapon recently fired. Results of handwiping tests for Solis and Robert Martinez were inconclusive.

The foregoing evidence would allow a jury to conclude beyond a reasonable doubt that appellant knowingly or intentionally attempted to cause the death of Alfonso Posada under the immediate influence of sudden passion arising from an adequate cause. Moreover, the State's evidence does not support an inference other than finding that appellant intentionally or knowingly attempted to cause the death of Alfonso Posada under the immediate influence of sudden passion from an adequate cause. We overrule appellant's fourth point.

■ In his fifth point of error in his appeal of his murder conviction, appellant asserts that the evidence is insufficient to support his conviction because he raised the issue of sudden passion and the State failed to negate sudden passion beyond a reasonable doubt. Appellant argues that the aforementioned testimony indicates that he was acting in the heat of passion caused by and arising from provocation by Solis. *See* TEX.PENAL CODE ANN. § 19.04(b) (Vernon 1989). Appellant also directs our attention to Robert Martinez's testimony that appellant had called him on December 7, 1990 from the Ladies Choice Club and asked Robert to pick him up because "[h]e felt like there was going to be trouble" because a man was there "that had jumped him before."

In *Johnson v. State*, the Court of Criminal Appeals stated:

[I]f the issue of "sudden passion" is raised but a jury finds a defendant guilty of the offense of murder as alleged in the indictment, this Court will make two determinations in a sufficiency analysis: "(1) whether the evidence was sufficient to establish the offense of murder and (2) whether the evidence was sufficient to disprove the issue of [sudden passion]." *Jefcoat v. State*, 644 S.W.2d 719, 725 (Tex.Crim.App.1982) (panel opinion and rehearing denied by Court en banc). "To prove the absence of sudden passion, the State may present evidence tending to establish its converse—e.g., that at the moment he intentionally or knowingly killed, appellant was capable of, and did in fact act with cool reflection, in spite of circumstances that may well have been provocative." *Gold v. State*, 736 S.W.2d 685, 690 (Tex.Crim.App.1987).

*Johnson v. State*, 815 S.W.2d 707, 711 (Tex. Crim.App.1991).

We must first decide whether the evidence was sufficient to establish the offense of murder. A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989). As previously stated, the record shows that an eyewitness identified appellant as the person carrying a gun on the night of the shooting. Several witnesses reported a confrontation between appellant and Solis, and Solis was seen walking backwards during an argument between the two. Andrew Vazquez observed Solis with a man "with a gun at his head." Maria Banda testified that she heard Solis tell appellant "no, man" at least twice. Posada testified that after he was shot, he heard Solis say: "Who are you? Why are you doing this?" Detective Dodge testified that he recovered a handgun, a shell casing, a projectile, and a blood sample. No comparable fingerprints were obtained. Michael DuPree testified that he lives near the Ladies Choice Club and was awakened by a gunshot at about 2:00 a.m. on December 8, 1990. He heard an argument and heard a male say "please don't kill me, please don't shoot me" several times. Timothy Fallon testified that he is a trace evidence analyst. He tested three defects in Solis' clothing and found that residue from the clothing was consistent with residue from discharging a

firearm three times at a distance of about one foot, over three feet, and two to three feet. Dr. Charles Odum testified that he is a forensic pathologist who supervised the autopsy of Solis. He stated that Solis sustained three gunshot wounds, two to the chest and one to the neck. Either of the two chest wounds could have been fatal and Solis died from the gunshot wounds. The gun inflicting the wounds would have been fired at a distance from one foot to three feet from the body. We conclude that the evidence is sufficient to establish that appellant committed the offense of murder.

We must now address whether the evidence is sufficient to negate beyond a reasonable doubt appellant's claim that he acted with sudden passion. A rational fact-finder could conclude that the facts in this case were insufficient to constitute an "adequate cause" for sudden passion and that appellant acted with cool reflection. *See Johnson*, 815 S.W.2d at 712 (verbally taunting the accused was insufficient "adequate cause" for sudden passion); *Diaz v. State*, 722 S.W.2d 482, 489 (Tex.App.—San Antonio 1986), *vacated on other grounds*, 761 S.W.2d 1 (Tex.Crim.App.1988) (accused did not act with sudden passion arising from adequate cause when he shot victim after participating in tavern fight with him). We conclude that a rational trier of fact could find the absence of either "adequate cause" or "sudden passion" beyond a reasonable doubt. Accordingly, we overrule appellant's fifth point of error.

In his sixth point in his appeal of his murder conviction, appellant contends that the evidence is insufficient to prove that his conscious desire or objective was that Solis' death would result from his being shot. We have already found sufficient evidence that appellant intentionally or knowingly caused the death of Steve Solis. Further, the definition of "knowingly" allows a jury to convict if it finds that a defendant is aware that his conduct is reasonably certain to cause a result. TEX.PENAL CODE ANN. § 6.03(b) (Vernon 1974). We overrule appellant's sixth point.

## DEADLY WEAPON FINDING

In a crosspoint, the State asserts that the trial court inadvertently omitted the jury's affirmative finding that appellant used a deadly weapon during the commission of the offense of murder. Where the judgment provides for "Findings on Use of Deadly Weapon," the entry is "No finding." The State asks that the judgment be reformed to correctly reflect the finding. Here, the jury made a *de facto* affirmative finding that appellant used a deadly weapon when it found him guilty as charged by the indictment and the indictment characterized the firearm as a deadly weapon. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App.1985). Accordingly, we reform the judgment to reflect the jury's *de facto* affirmative finding by deleting "No finding" and adding the phrase: "The court finds that Paul Martinez, Jr. beyond a reasonable doubt used a firearm, a deadly weapon, during the commission of the offense of murder." *See Asberry v. State*, 813 S.W.2d 526, 531 (Tex.App.—Dallas 1991, pet. ref'd).

We affirm the judgment of the trial court for the attempted voluntary manslaughter conviction. As reformed, we affirm the judgment of the trial court for the murder conviction.

ASHWORTH, J., concurs.

ASHWORTH, Justice, concurring.

I concur in the holdings and in the opinion. However, I strongly feel that the prosecuting attorney should be chastised for obvious improper argument; first with regard to voir dire statements concerning failure of the defendants to testify, and secondly in argument that appellant was sorry that he did not kill Officer Fuentes. We are correct in holding that error was not properly preserved by appellant as to the voir dire statements, but at this early stage of the trial, it is my belief that a mistrial should have been declared to emphasize to the prosecuting attorney the error of his statement and to possibly deter him from further prosecution error, which he in fact later committed in argument.

The prosecutor's argument that appellant was sorry that he had not killed Officer Fuentes clearly was improper, and we have so held although we also held that it was not such as to deprive appellant of a fair and proper trial. I feel that we have strained the limits of appellate review in order to overcome prosecutorial misconduct. It appears that the bounds of argument are continually being stretched to the limit. While we are correct in our assessment of the errors in this case, such conduct should be censured.