02-11-181-CR








 




 
 
 
 
 
  
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
 
 




 

 

NO. 02-11-00181-CR

 

 




 
 
 Aaron Benton Watson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 




 

 

----------

FROM THE 89th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Aaron Benton Watson of murder and assessed his
punishment at thirty years’ confinement and a $2,500 fine.  The trial court
sentenced him accordingly.  Appellant brings six issues on appeal, arguing
charge error and jury selection error and contending that the evidence is not
sufficient to disprove his self-defense claim.  Because the trial court
committed no reversible error and the evidence is sufficient to support Appellant’s
conviction and the jury’s rejection of his claim of self-defense, we affirm the
trial court’s judgment.

Background
Facts

On
September 25, 2009, Appellant drove his girlfriend Amanda Buchanan to an
engagement party.  After the party, Appellant drove Buchanan and her friend,
Heather Scoggins, back to Scoggins’s apartment.  At Scoggins’s apartment,
Appellant and Buchanan had a physical altercation in the bathroom; Appellant
“kind of pushed her,” causing her to hit her head on the soap dish mounted in
the tub.

Appellant
left Scoggins’s apartment, walked to his truck, and tried to leave the
apartment complex.  Appellant could not find his car keys, however, so he
returned to Scoggins’s apartment.

In
the meantime, Scoggins had gone to her next-door neighbor’s apartment and
borrowed a cell phone from Heather Gourley (Gourley), who was outside, to call
the police.  Gourley, her boyfriend Samuel Zamora, her sister Charlotte, and
Charlotte’s husband Victor Vasquez, along with Victor and Charlotte’s children,
all lived next door and were present that evening.  Gourley’s cousin, Cody, was
also visiting the apartment that evening.

Upon
his return to Scoggins’s apartment, Appellant checked on Buchanan and asked her
to leave with him, but she refused.  As he left the apartment this time,
Appellant noticed Scoggins in the front doorway, on the phone.  Appellant asked
her if she had called the police.  At trial, witnesses testified to different
versions of Appellant’s actions at this point.

It
was the consensus that Appellant was angry, and Appellant and Gourley both
testified that Appellant threw a bottle through Scoggins’s front window and
then headed back to his truck.

Zamora,
Gourley, Vasquez, and Cody followed Appellant to his car; Gourley testified
that they did so to tell him to leave.  Appellant retrieved a screwdriver from
his truck and placed it under his shirt.  Zamora and Appellant swung at each
other.  Appellant punched Zamora with the hand that held the screwdriver and stabbed
him in the head, causing injury that resulted in his death.  Appellant then
fled the scene on foot.

At
trial, Appellant testified and asserted self-defense.  He testified that on the
night in question, Zamora, Gourley, and Vasquez followed him to his truck and
yelled at him while he was searching for his keys.  Appellant testified that he
felt threatened and that he got out of his truck to retrieve a screwdriver from
the bed of his truck.  Appellant placed the screwdriver under his shirt and
pretended that he had a gun.  He told Zamora, Gourley, and Vasquez to leave him
alone or else he would shoot them.  Appellant testified that his threats did
not stop the group from advancing.

Appellant
said that Gourley yelled at him about his behavior around children and that
Zamora threatened to “kick [his] ass.”  Appellant testified that he retreated
from the group but that Zamora and Gourley followed him and Gourley “bow[ed]
her chest” two or three times into his hand.  Zamora “snapped” and said, “[Y]ou’re
not going to put your hands on . . . my girl.”  At that point, Zamora punched
Appellant, and Appellant testified that he simultaneously punched Zamora while
the screwdriver was in his hand.  Appellant testified that he did not intend to
stab Zamora and that he only intended to hit Zamora.

Gourley
testified that she, Vasquez, Zamora, and Cody followed Appellant to his truck
and told him to leave.  Appellant’s truck was parked between the group and Appellant. 
Gourley said that Appellant never said anything to the group and that Zamora
followed Appellant into the street but was not aggressive or confrontational. 
When Gourley joined the two men in the street, grabbed Zamora’s arm, and “told
him [to] come on,” Appellant pushed her.  Zamora tried to punch Appellant, and
then Gourley heard a “loud boom” and saw Zamora’s eyes roll into the back of
his head and his body fall to the ground.

Vasquez
testified that as Appellant walked to his truck, he threatened to shoot all of
the bystanders (including Zamora, Gourley, and Scoggins).  According to
Vasquez, he, Cody, Gourley, and Zamora followed Appellant to his truck and
continued to follow him as he backed into the street.  Vasquez testified that
Appellant and Zamora were speaking but that he could not hear what they were
saying.  Zamora had a beer in his hand, but he put the beer down before he
began struggling with Appellant.  Vasquez testified that he thought he saw
Gourley join the struggle between Zamora and Appellant and that eventually he saw
Zamora fall to the ground.

Scoggins
testified that she saw Zamora, Gourley, and Vasquez (and others that she could
not identify) approach Appellant at his truck.  Appellant backed away from the
group, but they continued to walk toward him.  Zamora was closest to
Appellant.  Zamora and Appellant struggled, and Scoggins saw Zamora fall.

Appellant
was arrested and charged with murder.

Sufficiency
of the Evidence to Disprove Self-defense

In
his sixth issue, Appellant argues that the evidence is insufficient to disprove
his self-defense claim.  A defendant has the burden of producing some evidence
to support a claim of self-defense.[2]  The
State has the burden of persuasion in disproving self-defense.[3]  This
burden does not require the State to produce evidence refuting the self-defense
claim; rather, the burden requires the State to prove its case beyond a
reasonable doubt.[4]  Self-defense
is an issue of fact to be determined by the jury.[5]  A
jury verdict of guilty is an implicit finding rejecting the defendant’s
self-defense theory.[6]

In
reviewing the sufficiency of the evidence to support the jury’s rejection of
Appellant’s self-defense theory, we examine all of the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense and also could have
found against him on the self-defense issue beyond a reasonable doubt.[7]

Appellant
argues that the evidence admitted at trial supports his contention that he
feared death or serious bodily injury.  Zamora was a member of a group of at
least three people who were approaching Appellant in a threatening manner.  Appellant
was attempting to leave in his pickup, but he could not find his keys.  He
stepped out of his pickup and grabbed a screwdriver from the toolbox in the bed
of the pickup.  The record does not reflect that anyone other than Appellant
exhibited a weapon.  Of the group of others, the record reflects that, at the
time Zamora was stabbed, only Zamora attempted to fight.  Appellant testified
that both he and Zamora swung a punch at the same time.  Appellant was holding
the screwdriver.

“Deadly
force” is defined as “force that is intended or known by the actor to cause, or
in the manner of its use or intended use is capable of causing, death or
serious bodily injury.”[8]  Section
9.32 of the penal code provides,

A person is justified
in using deadly force against another . . . if the actor would be justified in
using force against the other under Section 9.31; and . . . when and to the
degree the actor reasonably believes the deadly force is immediately necessary
. . . to protect the actor against the other’s use or attempted use of unlawful
deadly force.[9]

Although
Appellant is correct that he had the right to defend himself and was justified
in the use of force, the record does not justify his use of deadly force
because there is no evidence that anyone other than Appellant had a weapon or
otherwise used or threatened deadly force.[10]  We
therefore hold that the evidence is sufficient to support Appellant’s
conviction and the jury’s rejection of his self-defense claim.  We overrule
Appellant’s sixth issue.

Jury
Selection Issues

In
his third issue, Appellant argues that the trial court committed reversible
error when it denied his motion for access to information on potential jurors.  Although
Appellant argues (1) that the State indicated below that the information denied
him was similar to the information contained on TCIC and NCIC and (2) that the
trial court’s refusal to provide him that information was a denial of due
process, he correctly states that the record is silent as to what information
the jail management software to which he sought access would have provided
him.  Without more, we cannot know the extent to which he was denied
information not available elsewhere.  Nor can we know, without more, whether he
could have secured the information by other means.  Consequently, we are
compelled to overrule Appellant’s third issue.

In
his fourth and fifth issues, Appellant argues that the trial court improperly
sustained the State’s challenges to two members of the venire.  The first
veniremember explained that the district attorney is married to her former
husband.  When asked if the relationship would cause her to “lean either one
way or the other in this case even the slightest bit,” she replied,
“Possibly.”  She conceded that “[o]ne side could start out ahead or behind in
[her] mind just because of [her] relationship.”  The trial court excluded her
for cause over Appellant’s objection.

The
State discovered an active warrant for misdemeanor theft by check in regard to
the other excluded veniremember, Duran.  She admitted to a dispute over a check
several years before trial, but she denied that there was an active warrant.  Duran
also admitted to having had a financial dispute with the medical provider
complainant named in the warrant but stated that she had paid her debt and had
no knowledge that a warrant had been issued.  The trial court heard the State’s
information about the warrant and the veniremember’s explanation.  The trial
court granted the State’s challenge for cause over Appellant’s objection.  We
cannot say that the trial court erred by crediting the State’s statements that its
records reflected an active warrant rather than the venire member’s denial.

In
any event, as to both veniremembers, we cannot say that their exclusion, even if
error, requires reversal.  The Texas Court of Criminal Appeals has stated that
“erroneous excusing of a veniremember will call for reversal only if the record
shows that the error deprived the defendant of a lawfully constituted jury.”[11]  Under Jones,
the issue is whether the sitting jurors were impartial.[12] 
Appellant does not challenge the sitting jury.  We therefore overrule Appellant’s
fourth and fifth issues.

Jury
Charge

In
his first issue, Appellant argues that the trial court’s refusal to grant his
request to incorporate the self-defense instruction into the application
paragraph of the murder instruction constituted reversible error under Almanza.[13] 
Appellate review of claimed error in a jury charge involves a two-step process.[14]
 We must first determine whether error occurred.[15]

The
trial court instructed the jury on murder and provided an application
paragraph.  The charge then instructed the jury to
consider self-defense if they found the State had proved murder but to consider
manslaughter if they had a reasonable doubt that the State had proved murder. 
After explaining self-defense, the charge instructed the jury in an application
paragraph dealing with self-defense in the murder context.  The jury charge was
sufficient to properly instruct the jury on self-defense and on the application
of the law of self-defense to the facts of the case.[16] 
We overrule Appellant’s first issue.

In
his second issue, Appellant argues that the trial court reversibly erred by
improperly instructing the jury on the requisite mental state of murder.  We
first determine whether error occurred.[17]

Murder
is a result-oriented offense committed when the “conscious objective or desire
of the perpetrator is to cause death or when the perpetrator is aware that his
conduct is reasonably certain to cause death.”[18] 
A proper jury charge does not contain the full statutory definition of
“intentional” but only the portion of the definition requiring the jury to find
that the defendant intended to cause a specific result of death.[19]

In
the case now before this court, the trial court instructed the jury,

A
person acts intentionally, or with intent, with respect to the result of his
conduct when it is his conscious objective or desire to engage in the conduct
or cause the result.

The
State concedes that the trial court’s abstract definition of “intentionally” is
erroneous because it is not limited to the result of the conduct, that is,
causing the death.[20]

When
there is error in the trial court=s
charge but it was not preserved below, as in the case before us, we must decide
whether the error was so egregious and created such harm that Appellant did not
have a fair and impartial trial—in short, that Aegregious
harm@ has
occurred.[21]

Egregious
harm “‘is a difficult standard to prove and such a determination must be done
on a case-by-case basis.’”[22] 
In making an egregious harm determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@[23] 
Errors that result in egregious harm are those “that affect the very basis of
the case, deprive the defendant of a valuable right, vitally affect the
defensive theory, or make a case for conviction clearly and significantly more
persuasive.”[24] 
The purpose of this review is to illuminate the actual, not just theoretical,
harm to the accused.[25]

Appellant
testified that he knew that he had the screwdriver in his hand but that he did
not intend to stab Zamora, only to hit him.  If the
jury had believed Appellant’s testimony, they would have found that Appellant
did not intend to engage in the conduct.  That is, apart from any consideration
of whether Appellant intended to cause Zamora’s death, the jury would have
found that he did not intend to stab Zamora.  We cannot say that Appellant
suffered egregious harm from the trial court’s erroneous instruction.  We
overrule Appellant’s second issue.




Conclusion

Having
overruled Appellant’s six issues, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL: 
DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
May 17, 2012









[1]See Tex. R. App. P. 47.4.





[2]Zuliani
v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).





[3]Saxton
v. State, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).





[4]Id.





[5]Id.
at 913–14.





[6]Id.
at 914.





[7]See
id.





[8]Tex.
Penal Code Ann. § 9.01(3) (West 2011).





[9]Id.
§ 9.32.





[10]See
id.





[11]Jones v. State, 982 S.W.2d 386, 394 (Tex. Crim. App.
1998), cert. denied, 528 U.S. 985
(1999).





[12]Gamboa
v. State, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).





[13]Almanza v. State, 686 S.W.2d 157,
171–72 (Tex. Crim. App. 1985) (op. on reh’g).





[14]Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see Sakil v. State,
287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).





[15]See
Abdnor, 871 S.W.2d at 731–32.





[16]See Caldwell v. State, 971 S.W.2d 663, 666–67 (Tex. App.—Dallas 1998,
pet. ref’d).





[17]See
Abdnor, 871 S.W.2d at 731–32.





[18]Martinez v. State, 833 S.W.2d 188, 195 (Tex. App.—Dallas 1992, pet. ref’d).





[19]Cook
v. State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994).





[20]See
id.





[21]Almanza, 686 S.W.2d at 171; see Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).





[22]Taylor v. State, 332 S.W.3d 483, 489
(Tex. Crim. App. 2011) (quoting Hutch, 922
S.W.2d at 172).





[23]Almanza, 686 S.W.2d at 171; see
generally Hutch, 922 S.W.2d at 172–74.





[24]Taylor, 332 S.W.3d at 490 (citing Almanza, 686 S.W.2d at 172).





[25]Almanza, 686 S.W.2d at 174.