Francisco VASQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–90–738–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 18, 1991.

Discretionary Review Refused Oct. 30, 1991.

Nick Barrera, Brian W. Wice, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a conviction for felony murder. In four points of error, appellant argues that the trial court erred by: (1) overruling his motion for instructed verdict; (2) permitting an assistant medical examiner to testify concerning the autopsy report prepared by another assistant medical examiner; (3) allowing testimony as to extraneous offenses; and (4) overruling appellant's request for a jury instruction on the lesser included offense of negligent homicide. We affirm.

During the early evening of December 12, 1989, appellant was seen driving a blue automobile in the parking lot of a Wal-Mart store in Pasadena, Texas. There was another male, a Mr. Green, in the front passenger seat. A customer, Patricia Bethume, was walking through the parking lot and appellant's car passed very close to her. Green reached out and grabbed her purse. Ms. Bethume struggled with the man momentarily, but the car was dragging her along next to it and she almost fell beneath the wheels. After the passenger told her to let go of the purse, she complied. Several other customers witnessed the incident, some of whom were forced to move their children to safety as the car accelerated rapidly out of the parking lot. Other customers memorized the car's license plate to give to the police.

Several blocks from the store, Officer R. R. Rice, of the Pasadena Police Department, and his partner were writing a report when a blue automobile passed them at a high rate of speed. Immediately they took up pursuit and were informed by the police dispatcher that the car had been involved in a purse snatching. In the chase that followed, they reached speeds as high as 115 miles per hour. Numerous patrol cars were involved in the chase and police officers were forced to stop traffic at controlled intersections along the way to avoid collisions as appellant sped through red traffic lights. Officer Carolyn Denton, of the Friendswood Police Department, had stopped traffic at the intersection of Fairmont Parkway and Beltway 8 while appellant sped through and made a turn on two wheels. After appellant's car had passed the intersection, Officer Denton noticed a purse laying on the side of the road which she retrieved. It was later identified as

belonging to Ms. Bethume. Appellant continued south on Beltway 8, making a U-turn at the next intersection, and sped north on the Beltway with Officer Rice in pursuit. Another patrolman attempted to stop traffic at the intersection of Beltway 8 and Fairmont Parkway by pulling his car across the intersection. Appellant's car, traveling at an estimated 80 miles per hour, swerved to avoid hitting the cars stopped for the red light, jumped the curb, and collided with a pickup truck proceeding through the intersection on a green light. The pickup was thrown 85 feet from the point of impact and the driver was thrown from the vehicle and landed 120 feet from the point of impact. Appellant managed to crawl from his vehicle and was arrested immediately. The passenger, Green, was pinned between the dashboard and the seat. The driver of the pickup died at Hermann Hospital following a Life Flight. Appellant was subsequently convicted of felony murder.

■ In his first point of error, appellant argues that the trial court erred in overruling his motion for instructed verdict because the evidence was insufficient to prove that appellant committed the underlying offense of theft. Specifically, appellant asserts what might be described as the "innocent chauffer" defense: that he was only driving the car and had nothing to do with the theft of the purse. He says that the record is devoid of any affirmative act involving him in the purse snatching, other than the fact that he fled the scene, increasing his speed and driving recklessly after police pursuit commenced. He contends that the State failed to prove any agreement between Green and appellant to commit the underlying crime of theft. Under the facts, we have no difficulty in finding sufficient evidence to sustain appellant's conviction.

■ In reviewing challenges to the sufficiency of the evidence, this court must view the evidence in the light most favorable to the verdict to determine if a rational trier of fact could find all elements of the crime beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.

App.1989). Appellant was tried under the law of parties. The Penal Code provides that a person is criminally responsible for an offense committed by another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense...." TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). Appellant's mere presence at the scene, in and of itself, would be insufficient to sustain the conviction for the underlying felony. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987); *Lacy v. State,* 782 S.W.2d 556, 558 (Tex.App.—Houston [14th Dist.] 1989, no pet.). In determining if a person is a party to an offense and bears criminal responsibility, the court should look to the events before, during, and after the commission of the offense. *Beardsley,* 738 S.W.2d at 684; *Freeman v. State,* 736 S.W.2d 154, 156 (Tex.App.—Houston [14th Dist.] 1987, no pet.).

There was testimony that both appellant and Green were watching the customers in the parking lot in a suspicious manner as the two defendants cruised through the lot. As the car approached Ms. Bethume, with its lights off, appellant steered the car so that it passed within reach of Ms. Bethume's arm enabling Green to reach out and grab her purse. Appellant then immediately turned on the car's lights and accelerated rapidly from the parking lot with the customers hearing the sound of Green's laughter. It seems inconceivable to us that a rational trier of fact could find anything but a premeditated plan to snatch the purse. We overrule appellant's first point of error.

■ In his second point of error, appellant argues that the trial court erred in permitting an assistant medical examiner to testify concerning an autopsy report authored by another doctor. Appellant asserts reversible error because of the hearsay nature of the testimony under TEX. R.CRIM.EVID. 803(6) and 803(8)(B). Appellant also relies on the court of criminal appeals' opinion holding that when the DPS chemist who actually performed the chemi-

cal analysis is absent, testimony by other chemists is inadmissible as a hearsay exception under TEX.R.CRIM.EVID. 803(8)(B). *See Cole v. State,* No. 1179–87 (Tex.Crim. App. November 14, 1990) (not yet reported).[1] We find no error in allowing an assistant medical examiner to testify as to autopsy results when he did not perform the autopsy.

■ The prosecutor laid a proper predicate under Rule 803(6), records of regularly conducted activity or the business records exception. *Norton v. State,* 771 S.W.2d 160, 163 (Tex.App.—Texarkana 1989, pet. ref'd). The court of criminal appeals, in *Cole,* held that Rule 803(6) should not be used to circumvent the prohibition found in Rule 803(8)(B), which provides that the following is not excluded by the hearsay rule: "Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth ... (B) matters observed pursuant to duty imposed by law as to matters there was a duty to report, *excluding, however, matters observed by police officers and other law enforcement personnel....*" TEX.R.CRIM.EVID. 803(8)(B) (emphasis added). We find that Rule 803(8)(B) is inapplicable in the instant case, because an assistant medical examiner is not a police officer or any other type of law enforcement personnel. *See* TEX. CODE CRIM.PROC.ANN. art. 49.25 (Vernon 1979). Consequently, we find the autopsy report admissible as a business record and overrule appellant's second point of error.

■ In his third point of error, appellant argues that the trial court erred in allowing a police officer to testify concerning appellant's extraneous offenses. On cross-examination, Officer Denton testified that, in her opinion, a collision was likely because of the speed at which appellant's car was traveling. Defense counsel was attempting to establish that the ensuing collision was not appellant's fault, but, rather, that of Officer Rice who was pursuing the car.

On re-direct, she testified that the vehicle being pursued seemed familiar and, when she saw the purse discarded from appellant's car, she realized that a bulletin had been issued that a similar vehicle had been involved in numerous purse snatchings in the weeks prior to the incident. Appellant contends that reversible error occurred in admitting evidence of unrelated thefts and robberies. We disagree.

■ The Rules of Criminal Evidence provide that evidence of other crimes, wrongs, or acts may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." TEX.R.CRIM.EVID. 404(b). Extraneous offense evidence that logically serves any of these purposes is relevant *"beyond* its tendency 'to prove the character of a person to show that he acted in conformity therewith.' " *Montgomery v. State,* 810 S.W.2d 372, 377 (Tex.Crim.App.1991) (quoting TEX.R.CRIM.EVID. 404(b)) (emphasis in original). Such evidence is admissible subject only to the trial court's discretion to exclude it if the danger of unfair prejudice *substantially* outweighs its probative value. *Id.;* TEX.R.CRIM.EVID. 403. Rule 403 favors admissibility of relevant evidence with the presumption "that relevant evidence will be more probative than prejudicial." *Montgomery,* at 389. We find Officer Denton's testimony to be more probative than prejudicial.

Initially, we note that defense counsel initiated the inquiry at issue through his attempt to prove that the cause of the complainant's death was not due to appellant's excessive speed, but rather the officer's pursuit. Officer Denton stated that, in her opinion, a collision was imminent. This is a reasonable conclusion based on the fact that appellant was traveling on Beltway 8 and running red lights at speeds in excess of 80 miles per hour. Her reference to the previously issued bulletin concerning a similar blue vehicle involved in

---

1. *Cole* is pending on motion for rehearing and is not final or part of the jurisprudence of this state. *See Yeager v. State,* 727 S.W.2d 280, 281 n. 1 (Tex.Crim.App.1987). We are, therefore, not constrained to follow *Cole* and, in any event, find it inapplicable to the facts of this case. *See also Brown v. State,* 807 S.W.2d 615, 616–17 (Tex.App.—Houston [14th Dist.] 1991, no pet.).

other purse snatchings was relevant and probative to establish identity and plan and was admissible under the rules of evidence. TEX.R.CRIM.EVID. 404(b).

■ Further, extraneous offenses are admissible in rebuttal to a defensive theory. *Albrecht v. State*, 486 S.W.2d 97, 101 (Tex.Crim.App.1972). The situations where other crimes, wrongs, or acts listed in Rule 404(b) may be utilized by the prosecution are "neither mutually exclusive nor collectively exhaustive." *Montgomery*, at 377. Appellant's attempt to lay the blame for the collision and the resulting death of the complainant at the feet of the pursuing police officer opened the door for the State to rebut his defensive theory. This was done through Officer Denton's testimony that a similar vehicle had been reported to be involved in similar crimes. We find that the evidence was properly admitted and we overrule appellant's third point of error.

In his fourth point of error, appellant argues that the trial court erred in not instructing the jury on the lesser included offense of negligent homicide. At the close of evidence, appellant requested jury instructions on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. The trial court included an instruction on involuntary manslaughter in the charge. Appellant contends it was reversible error not to charge the jury on both lesser included offenses. We disagree.

■ There is a two-pronged test for determining if a jury is entitled to be charged on a lesser included offense:

First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense.

*Moreno v. State*, 702 S.W.2d 636, 640 (Tex. Crim.App.1986); *see also Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981)

(op. on reh'g); *Johnson v. State*, 681 S.W.2d 648, 651 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). Appellant requests this court to disregard established precedent and, instead of applying the above test, utilize the federal standard.[2] This we decline to do.

Involuntary manslaughter is, by definition, a lesser included offense of murder and criminally negligent homicide is a lesser included offense of involuntary manslaughter. *Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App.1984). The only distinction between involuntary manslaughter and criminally negligent homicide is the required culpability. *Graham v. State*, 657 S.W.2d 99, 104 (Tex.Crim.App.1983). "A person commits an offense if he causes the death of an individual by criminal negligence." TEX.PENAL CODE ANN. § 19.07(a) (Vernon 1989). A person is criminally negligent if:

[W]ith respect to the circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur.

*Id.* § 6.03(d) (Vernon 1974). A person commits involuntary manslaughter if "he recklessly causes the death of an individual...." *Id.* § 19.05(a)(1) (Vernon 1989). Recklessness entails a *conscious* disregard for a substantial and unjustified risk. *Id.* § 6.03(c) (Vernon 1974).

■ Therefore, to be entitled to the instruction on the lesser included offense of criminally negligent homicide, there must be some evidence that appellant merely should have been aware of the substantial risk associated with his excessive speed, as opposed to *consciously* disregarding that risk. There was testimony that appellant was aware of the fact that Officer Rice was following him almost from the moment the officer activated his emergency lights. Appellant then accelerated and a chase en-

2. Appellant requests us to require an instruction on a lesser included offense "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir.1988), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988). It is not our place, as an intermediate appellate court, to ignore Texas jurisprudence through the adoption of a new constitutional standard.

sued with speeds reaching 115 miles per hour on congested roads. Appellant ran two red lights at a high rate of speed, the last resulting in a collision and the fatality leading to his felony murder indictment. We hold that there is no evidence in the record that appellant merely acted negligently. Rather, the evidence reflects that appellant made a concerted effort to elude police pursuit that ended with the tragic death of an innocent person. We overrule appellant's fourth point of error.

Accordingly, we affirm the judgment of the trial court.