Anthony Wayne SANDLES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–01453–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 24, 1993.

Discretionary Review Refused
Oct. 20, 1993.

Jerome Godinich, Houston, for appellant.

Anthony Wayne Sandles, pro se.

John B. Holmes, Mary Lou Keel, Di Glaeser, Houston, for appellee.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant, Anthony Wayne Sandles, guilty of robbery. After finding two enhancement paragraphs true, the trial court assessed his punishment at 35–years confinement. In two points of error, appellant asserts that the trial court erred in admitting an autopsy report and autopsy photographs. We affirm.

Appellant was tried with two co-defendants. All three defendants had been indicted for aggravated robbery.

At about 11:30 p.m. on February 18, 1990, five people were congregated outside the Tulson Supermarket at the corner of Holman and Burkett in the third ward area of Houston. Shortly before midnight, Wallace Moses Taylor arrived in his pickup truck and parked at the side of the store. Christopher "Chicken" Cain and co-defen-

dant Roy Lee Davis were shooting dice just outside the store. As Taylor walked from his truck to the store, Cain told him he would give him $5.00 to buy some dice. Taylor did not respond and went into the store to buy beer, emerging two or three minutes later.

Davis asked Taylor whether he had gotten the dice. Taylor responded that there were no dice in the store. Davis approached Taylor, hit him in the chest, threw him against the brick wall of the supermarket, and "busted his head." Davis then proceeded to kick Taylor in the legs to try to make him fall. Taylor fell in front of his truck. Co-defendant Kevin Rhodes approached, and Davis asked for the knife. Rhodes handed Davis a folding pocket knife. Davis first tried to cut Taylor's throat, then at some point stabbed him in the chest. The "attack" went on for 15 to 30 minutes.

Appellant was standing by the Metro bus stop across the street from the store. After Davis stabbed Taylor, appellant walked up, grabbed Taylor around the neck, and told him to give him money. Appellant checked Taylor's pockets and removed his money. All three defendants then fled the scene. Taylor subsequently died from a stab wound to the chest.[1]

## AUTOPSY REPORT AND MEDICAL EXAMINER'S TESTIMONY

In point of error one, appellant complains of the admission of the report of Taylor's autopsy and testimony about that report given by a medical examiner who did not perform the autopsy. Appellant asserts that the report and the testimony are inadmissible hearsay.

### Autopsy Report

The autopsy report on Taylor was prepared by Harris County assistant medical examiner Robert Jordan. Dr. Jordan had left the Medical Examiner's office before trial. The autopsy report was introduced through the testimony of assistant medical examiner Eduardo Bellas. Dr. Bellas testified that he had worked with Dr. Jordan on many autopsies in the past. He knew that Dr. Jordan had been employed with the Medical Examiner's office for five to six years and was certified or licensed as a medical examiner in the State of Texas.

The State laid the predicate for admission of the autopsy report as a business record under TEX.R.CRIM.EVID. 803(6):

A: Is State's Exhibit No. 39 a record that is kept by the Medical Examiner's Office?

A: Yes.

Q: Is it kept in the regular course of the Medical Examiner's business?

A: Yes.

Q: Was it made at or near the time of the purported events or contents of State's Exhibit No. 39?

A: Yes.

Q: And is it made at or near the time of the reported event by someone of personal knowledge of that event?

A: Yes, sir.

Appellant objected to Dr. Bellas's testimony on the basis that Dr. Bellas was not qualified to testify to Dr. Jordan's credentials or "whether or not he is in fact a pathologist licensed in the State of Texas." He objected to the autopsy report as inadmissible hearsay because it was offered through a witness who neither performed nor supervised the procedure.

Appellant challenges the admissibility of the autopsy report under TEX.R.CRIM.EVID. 803(8)(B), the public records exception. That rule provides that the following is not excluded by the hearsay rule:

Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, matters observed by police officers and other law*

---

**1.** There is nothing in the record to indicate whether any person was indicted or tried in connection with the death of Taylor.

*enforcement personnel,* or (C) against the state, factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate lack of trustworthiness.

(Emphasis added.) The issue is whether a medical examiner is an "other law enforcement personnel" for the purpose of rule 803(8)(B).

The Texas appellate courts are split on this question. Appellant urges us to join the Corpus Christi Court of Appeals in holding that a medical examiner, like a Department of Public Safety chemist, is a law enforcement officer for the purposes of the rule. *Cruz v. State,* 827 S.W.2d 83, 86 (Tex.App.—Corpus Christi 1992, no pet.). The State advocates our following the Dallas Court of Appeals in *Martinez v. State,* 833 S.W.2d 188, 194 (Tex.App.—Dallas 1992, pet. ref'd) and *Garcia v. State,* 833 S.W.2d 564, 569 (Tex.App.—Dallas 1992, pet. granted), and the Fourteenth Court of Appeals in *Vasquez v. State,* 814 S.W.2d 773, 776 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) in holding that medical examiners are not "other law enforcement personnel" under rule 803(8)(B).

The Texas Court of Criminal Appeals has held that DPS chemists are to be included in the other law enforcement category under rule 803(8)(B). *Cole v. State,* 839 S.W.2d 798, 803 (Tex.Crim.App.1992) (op. on reh'g). Cole was convicted of aggravated sexual assault. The trial court admitted results of chemical tests performed on evidence collected at a medical examination of the sexual assault victim. The DPS chemist who testified about the test results had not performed the actual tests. The State tendered the report under the business report hearsay exception, rule 803(6). On appeal, Cole contended that the trial court admitted the evidence in contravention of rule 803(8)(B). In holding the report was inadmissible, the Texas Court of Criminal Appeals criticized "opinions of many courts that hold laboratory reports to be generally objective and routine in nature [which] are often inadequate in their consideration of the adversarial and investigatory context out of which many such scientific reports

arise." *Cole,* 839 S.W.2d at 808. The court closely followed *United States v. Oates,* 560 F.2d 45 (2nd Cir.1977), and emphasized:

> The subjective nature of the testing process is not the lone factor for consideration in determining the admissibility of a report under Rule 803(b)'s exclusionary provision. Substantial attention should be given to the adversarial context in which the relevant tests were conducted.

*Cole,* 839 S.W.2d at 809. On rehearing, the *Cole* court noted that the chemist testified that "a forensic chemist will take evidence that is admitted to our laboratory concerning a *criminal investigation." Id.* (emphasis added). The court reaffirmed its original holding:

> The items upon which the tests were performed were collected as part of investigating a crime, and the reports prepared by the DPS chemist were unquestionably a product of evaluating the results of that investigation. Furthermore, and perhaps most importantly, the reports were not prepared for purposes independent of specific litigation, nor were they ministerial, objective observations of an unambiguous factual nature. Therefore, we find that the letter reports in the instant case fail to satisfy the requirements of TRCE 803(8)(B), since they constitute "matters observed" by "other law enforcement personnel," and are therefore inadmissible.

*Id.*

In *Cruz,* the Corpus Christi court relied heavily on *Oates* and *Cole* as authority to hold that medical examiners fall within the category of rule 806(8)(B) law enforcement personnel. *Cruz,* 827 S.W.2d at 86. We decline to adopt that position because we find the reasoning of the Dallas Court of Appeals in *Garcia v. State* more persuasive.

In *Garcia,* the defendant was convicted of murder. The trial court admitted the autopsy report of the decedent as a rule 803(6) business record over defendant's objection that the report was hearsay. The acting chief medical examiner for Dallas

County had testified that the State's exhibit was a true and correct copy of the autopsy report of the decedent. The State laid the predicate for admission of the report under the business records exception. On appeal, the defendant complained the report was inadmissible hearsay based on *Cole* and *Oates*. The court noted that the Fifth Circuit has rejected the *Oates* analysis where the public document records "routine, objective observations, made as part of the every day function of the preparing official or agency." *Garcia*, 833 S.W.2d at 569 (quoting *United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985) (warrant of deportation is admissible under rule 803(8)(B))). The court also cited the legislative history of the Federal Rules of Evidence:

> The reason for [law enforcement personnel] exclusion is that observations by *police officers at the scene of the crime or the apprehension of the defendant* are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

*Garcia*, 833 S.W.2d at 569. The court then declined to follow *Oates:*

> In the instant case, the autopsy was performed by a medical examiner who accomplished such tasks repeatedly as a matter of routine. The observations and perceptions of a medical examiner are likely to be trustworthy because autopsies are performed under nonadversarial circumstances. The fact that these observations might be used against a person accused of a crime does not affect the reliability of the report.
>
> We further conclude that a medical examiner is not a police officer or other type of law enforcement personnel within the scope of rule 803(8)(B). We do not construe article 49.25 to confer law enforcement responsibilities on the medical examiner's office. The medical examiner investigates deaths in a wide variety of circumstances, many of which are not criminal in nature. In addition, the medical examiner is not employed by a law enforcement agency. He is appointed by the commissioner's court and serves at the pleasure of that political body.

*Garcia*, 833 S.W.2d at 569–70 (citations omitted). The court held the autopsy report admissible under both the 803(6) business records and the 803(8)(B) public records exceptions. *Accord Martinez v. State*, 833 S.W.2d 188, 194 (Tex.App.—Dallas 1992, pet. ref'd).

The Fourteenth Court of Appeals subscribes to the same opinion. In *Vasquez v. State*, 814 S.W.2d 773, 776 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd), the defendant was convicted of felony murder. On appeal, he complained of hearsay when an assistant medical examiner testified to an autopsy report performed by another doctor. The court, after noting that a proper predicate was laid for a business record and after quoting rule 803(8)(B), summarily held that medical examiners are not rule 803(8)(B) law enforcement personnel.

■ We hold that the admission of the autopsy report was not error under rules 803(6) and 803(8)(B).

### Medical Examiner's Testimony

Appellant also assigns as error the trial court's admission of the testimony of a medical examiner about an autopsy he did not perform and a report he did not prepare. On voir dire, Dr. Bellas admitted that he neither participated in the autopsy nor saw the body. The autopsy was not done at Dr. Bellas's direction or under his control.

The State laid the proper predicate for the admission of the autopsy report as a business record of the medical examiner's office. The autopsy report was admissible both as a business record and a public record. Dr. Bellas was qualified as an expert witness under Tex.R.Crim.Evid. 702.

■ There is no requirement that the medical examiner who testifies at trial be the same pathologist who performed the autopsy and prepared the report. *Garcia*, 833 S.W.2d at 570; *Brooks v. State*, 642 S.W.2d 791, 793 (Tex.Crim.App. [Panel Op.]

1982). In this case, the autopsy and autopsy pictures were admitted through the testimony of Dr. Bellas, as custodian of the records for the medical examiner. Dr. Bellas, as an expert witness, also testified that the findings in the autopsy report were consistent with an individual being stabbed with a small pocket knife. We hold that the trial court did not err by admitting the medical examiner's testimony about the autopsy report.

Even if the admission of the report and the testimony were erroneous, which we do not hold, the error would be harmless beyond a reasonable doubt. Appellant does not assert harm. Although appellant was tried for aggravated robbery, the jury convicted him of the lesser offense of robbery. There was overwhelming evidence that appellant was guilty of robbery. It was uncontroverted that appellant grabbed the deceased around the neck after he had been beaten and stabbed, demanded his money, and then took it from his pockets.

We overrule point of error one.

## AUTOPSY PHOTOGRAPHS

In point of error two, appellant asserts that the trial court erred in admitting certain autopsy photographs under TEX. R.CRIM.EVID. 403. The photographs depict the following:

Exhibit 29: Shows puncture wounds on Taylor's unclothed upper torso. The picture ends at the navel.

Exhibit 32: Shows the face and shoulders. A scalp wound at the hairline, center forehead, is evident. The jaw is tied and a tube protrudes from the right side of the mouth.

Exhibit 35: Shows the side of the face and left shoulder with multiple cuts. The jaw is tied and a tube protrudes from the right side of the mouth.

Exhibit 37: Shows just the chest with one puncture wound near the center line.

Exhibit 38: Shows the cleaned face and chest with the Medical Examiner's case number.

The photographs were introduced by the testimony of Dr. Bellas that he was the custodian of records at the Harris County Medical Examiner's Office. On cross-examination during voir dire, he admitted that he could not identify Taylor by his personal knowledge and had to rely on records. He also admitted that he had only seen the pictures for the first time that morning.

Appellant objected that the photographs were prejudicial, inflammatory, and nothing more than an attempt to bolster the evidence contained in the autopsy report. He further objected that Dr. Bellas was not qualified to identify the subject of the photographs. This objection, however, is unmeritorious because the photos were part of the Medical Examiner's records, which we previously discussed and found were admissible.

 The admission in evidence of photographs is within the discretion of the trial court, who determines whether they serve a proper purpose in the enlightenment of the jury. *Long v. State*, 823 S.W.2d 259, 270 (Tex.Crim.App.1991). Rule 403 applies only to relevant evidence. *Id.* at 271. Once the relevance of the photographs is established, the court must determine whether the probative value is substantially outweighed by the danger of unfair prejudice. *Id.* The prejudicial effect of the photographs may be determined by:

(1) The number of exhibits offered,

(2) Their gruesomeness,

(3) Their detail,

(4) Their size,

(5) Whether they are black and white or in color,

(6) Whether they are close-up,

(7) Whether the body is naked or clothed,

(8) And other unique factors to the situation.

*Goodwin v. State*, 799 S.W.2d 719, 739 (Tex.Crim.App.1990).

 If the reviewing court determines the photographs were inadmissible, it must conduct a harmless error analysis. *Long*, 823 S.W.2d at 275; TEX.R.APP.P. 81(b)(2). "[P]hotographs of a dead body, taken before autopsy, are 'competent, material, and relevant' when they depict the extent and

nature of injuries." *James v. State*, 772 S.W.2d 84, 98–99 (Tex.Crim.App.1989), *aff'd after remand*, 805 S.W.2d 415 (Tex. Crim.App.1990).

■ In this case, the photographs were relevant to show the stab wound and condition of the upper torso and face of Taylor. There was conflicting evidence regarding the precise wounds that Taylor suffered, and the photographs were relevant to establish the wounds and abrasions to his body. We now must determine whether the prejudicial effect outweighed the probative value of the photographs.

■ The trial court admitted five black and white photographs in evidence. Exhibits 29, 32, and 35 are eight by ten inches, and exhibits 37 and 38 are three by five inches in size. The photographs are close-up, the body is unclothed but shows nothing below the waist. The face is not contorted, the eyelids are closed, a cut below the breast is sutured neatly closed and is not particularly noticeable. While some blood is shown, it is in thin rivulets. The photographs are not "gruesome."[2] It was within the sound discretion of the trial court to admit the photographs, and that discretion was not abused. Further, even if the admission of the photographs were error, appellant did not complain that the error, if any, was harmful.

We overrule point of error two.

We affirm the judgment of the trial court.

---

2. These photographs are mild in comparison with description of the *Long* photographs: three of the photographs displayed bodies as they arrived at the medical examiner's office, and the other photographs were close-up shots of gaping and sutured large wounds that were incurred in a chopping-like attack.