Affirmed and Memorandum Opinion filed March 31, 2009








Affirmed
and Memorandum Opinion filed March 31, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00006-CR

____________

 

DARRELL WAYNE HILLIARD, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause No. 1076892

 



 

M E M O R A N D U M   O P I N I O N








A jury found appellant Darrell Wayne Hilliard guilty of
murder and, after finding two enhancement paragraphs true, assessed his
punishment at confinement in the Institutional Division of the Texas Department
of Criminal Justice for life.  On appeal, Hilliard contends that the trial
court erred by (1) instructing the jury to consider the Aprevious
relationship existing between the accused and the deceased [complainant]@ even though there
is no evidence that a relationship between Hilliard and the complainant ever
existed; (2) admitting photographs of the deceased complainant=s body; and (3)
refusing Hilliard=s request to reopen the evidence and admit
before the jury additional evidence regarding his alleged prior conviction.  We
affirm.

Background

Hilliard does not challenge the legal or factual
sufficiency of the evidence supporting his conviction.  We will briefly recite
the facts of the case.

During the early morning hours of July 15, 2006, Hilliard
started a fight with the complainant, Tom Brown, inside the E-Nice Club in
Houston.  Hilliard shot Brown four times in the torso and fled the club.  Brown
died at the scene.  Club patrons and employees, as well as the club=s owner and his
wife, witnessed the crime, and several of the witnesses picked Hilliard out of
photo spreads and identified him as the shooter.  The police later charged
Hilliard with murder.

At trial, in an effort to establish an alibi defense,
Hilliard presented testimony from various family members and friends, including
his brother, who testified that Hilliard attended and never left a party at his
girlfriend=s house.  Controverting the alibi, a police officer
who interviewed Hilliard=s brother in August 2006, testified that
the brother did not tell him that Hilliard was at any such gathering at the
time of the offense.

The jury rejected Hilliard=s alibi defense,
and found him guilty of murder as alleged in the indictment.  We will address
below other facts relevant to the issues.

Analysis

A.      Jury
Instruction

In his first issue, Hilliard contends the trial court erred
in submitting, over objection, the following jury instruction:  








You are instructed
that you may consider all relevant facts and circumstances surrounding the
death, if any, and the previous relationship existing between the accused and
the deceased, together with all relevant facts and circumstances going to show
the condition of the mind of the accused at the time of the offense, if any.

Hilliard
argues that the jury was instructed to consider Athe previous
relationship existing between the accused and the deceased@ in its
deliberations, even though both the State and the trial court
acknowledged that no evidence of a previous relationship was presented to the
jury.[1] 
Hilliard contends that the instruction assumed, and therefore implied, that a
previous relationship existed and that the evidence supported its existence. 
Hilliard argues that the instruction was an impermissible comment on the
evidence that the trial court should have omitted.  

A charge improperly comments on the evidence if it Aassumes the truth
of a controverted issue.@  See Whaley v. State, 717
S.W.2d 26, 32 (Tex. Crim. App. 1986); Jackson v. State, 105 S.W.3d 321,
326 (Tex. App.BHouston [14th Dist.] 2003, pet. ref=d).  When a
complaint is made that the charge comments on the weight of the evidence, we
review the charge as a whole rather than parts of the charge standing alone.  See
Whaley, 717 S.W.2d at 32.  In analyzing a jury-charge complaint, we must
first determine whether error exists in the charge and then, if error is found,
we must analyze the error for harm.  Ngo v. State, 175 S.W.3d 738, 743B44 (Tex. Crim.
App. 2005). 








Hilliard relies on Rocha v. State, 16 S.W.3d 1 (Tex.
Crim. App. 2000).  In Rocha, the trial court refused the defendant=s request to
include an instruction concerning the voluntariness of his confession.  The
requested instruction would have instructed the jury that if it had a
reasonable doubt that at the time of the defendant=s statement he Awas ill, was under
medication or otherwise reduced to a condition, physical and mental impairment
such as to render such admission, if any, not wholly voluntary,@ then the jury was
to Acompletely
disregard@ such an admission as evidence.  Id. at 19. 
The court of criminal appeals determined that the trial court did not err in
refusing to include the appellant=s requested
instruction because the appellant failed to cite supporting legal authority or
to explain what evidence raised the issue the instruction was intended to
address.  Id. at 20.

Additionally, the Rocha court noted that the
requested instruction amounted to an impermissible comment on the weight of the
evidence because it focused on illness and medication as factors that may
render the appellant=s confession involuntary.  Id.  The
court noted that A>[e]ven a seemingly
neutral instruction about a particular type of evidence constitutes an
impermissible comment on the wight of the evidence in violation of article
36.14 because such an instruction singles out a particular piece of evidence
for special attention.=@  Id.
(citing Matamoros v. State, 901 S.W.2d 470, 477 (Tex. Crim. App.
1995)).  Id.  Similarly, Hilliard argues, the inclusion of language
suggesting that a relationship existed between him and the complainant singled
out such evidence and so amounts to an erroneous comment on the weight of the
evidence. 

The instruction the trial court gave tracks article 38.36
of the Code of Criminal Procedure, which provides that in all prosecutions for
murder, the State or the defendant shall be permitted to offer testimony as to Aall relevant facts
and circumstances surrounding the killing and the previous relationship
existing between the accused and the deceased, together with all relevant facts
and circumstances going to show the condition of the mind of the accused at the
time of the offense.@  See Tex. Code Crim. Proc. Art.
38.36(a) (Vernon 2005).  Many courts have held that the rule stated in article
38.36 and its predecessors is a rule of evidence, and the trial court, although
not required to give an instruction on it to the jury, does not err in doing
so.  Milner v. State, 262 S.W.3d 807, 809 (Tex. App.CHouston [1st
Dist.] 2008, no pet.) (collecting cases).  Hilliard does not refer to or
distinguish this line of cases.








But even if we assume that giving the instruction was
error, it resulted in no harm.  When the charge contains error and, as in this
case, that error has been properly preserved, we must reverse if the error
caused the appellant Asome harm.@  See Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=ing).  We assay
the actual degree of harm in light of the entire jury charge, the state of the
evidence, including the contested issues and the weight of probative evidence,
the arguments of counsel, and any other relevant information revealed by the
record of the trial as a whole.  Id.  

Hilliard argues that the instruction caused at least some
harm because the trial court directed the jury to consider non-existent
evidence.  This purported misdirection, Hilliard contends, diminished his alibi
defense.  According to Hilliard, the State=s eyewitnesses
were not well-acquainted with him.  The jury could infer from that, Hilliard
argues, that he did not frequent the club, an inference that would support his
defense that he was somewhere else on the night of the shooting.  Hilliard complains
that the trial court=s instruction made it less likely that the
jury would so infer.

But the charge did not affirmatively instruct the jury that
a previous relationship between the two men existed; instead, the court
instructed the jury that it could consider such evidence Aif any.@  Further, both
sides and the trial court agreed there was no evidence that a previous
relationship between the two men existed, so the issue was not contested, and
the issue was not a topic of discussion in front of the jury.  Neither side
commented on the matter of a previous relationship, nor did they mention the
complained-of charge during argument. 








Most importantly, there was substantial evidence of
Hilliard=s guilt.  Several
of the State=s witnesses, including the club=s owner and his
wife, were able to identify Hilliard in photo spreads and in court. 
Additionally, one of the witnesses, Little Hayward Grant, who was working a
security job at the club, testified that he Agot between@ the assailant and
the complainant during their confrontation, and got a good look at the
assailant=s face.  Grant identified the assailant in court as
Hilliard.  Another witness, Katrina Robinson, a waitress at the club, testified
that she had an opportunity to see the assailant=s face two times
during the incident and the second time he Alooked right at [her].@  Robinson, who
also saw the gun in the assailant=s hand, identified
Hilliard as the assailant both in a photo spread during the police
investigation and in court.  Another witness heard the assailant yell during
his confrontation with the complainant that he was thirty-one years old, and
the evidence at trial was that Hilliard was thirty-one years old at the time of
the crime.  We conclude that the trial court=s inclusion of the
instruction, if error, was harmless.

We therefore overrule Hilliard=s first issue.

B.      Photographs


In his second issue, Hilliard contends that the trial court
abused its discretion in admitting, over his objections under Texas Rule of
Evidence 403, five crime-scene photographs (State=s Exhibits 16B20) and nine
autopsy photographs (State=s Exhibits 27B35) of the
complainant=s body.  Hilliard contends that the photographs were
gruesome and bloody, and had significant prejudicial effect but little
probative value.  He points out that he never contested how the complainant
died; his defense was that he was not the person who killed him.  Further,
Hilliard contends that other exhibits, such as photographs and a diagram of the
scene that explained the location of the body from the vantage point of the
eyewitnesses, the autopsy report, and an autopsy diagram of the injuries on the
body were more effective and much less prejudicial.  








We review the admission of evidence for an abuse of
discretion.  Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App.
1996).  So long as the trial court=s decision is
within the zone of reasonable disagreement, we will not disturb it on appeal.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=ing).  Although
admissible, relevant evidence may be excluded if its probative value is
substantially outweighed by a danger that it will unfairly prejudice, confuse,
or mislead the jury, if its inclusion will result in undue delay, or if it is
needlessly cumulative.  Tex. R. Evid. 403.  Generally, photographs are
admissible if verbal testimony about the matters depicted in the photographs
would be admissible and their probative value is not substantially outweighed
by the Rule 403 counter-factors.  Threadgill v. State, 146 S.W.3d 654,
671 (Tex. Crim. App. 2004).  Rule 403 favors the admission of relevant evidence
and carries a presumption that relevant evidence will be more probative than
prejudicial.  Id. 

A Rule 403 analysis by the trial court should include, but
is not limited to, the following factors:  (1) the probative value of the
evidence; (2) the potential of the evidence to impress the jury in some
irrational but nevertheless indelible way; (3) the time the proponent needs to
develop the evidence; and (4) the proponent=s need for the
evidence.  Erazo v. State, 14 S.W.3d 487, 489 (Tex. Crim. App. 2004)
(citing Montgomery, 810 S.W.2d at 389B90).  Additional
factors that may be considered by a court in conducting a Rule 403 balancing
test with respect to photographs include (1) the number of exhibits offered,
(2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are
black and white or in color, (6) whether they are close-up, (7) whether the
body is naked or clothed, (8) the availability of other means of proof, and (9)
circumstances unique to the case.  Long v. State, 823 S.W.2d 259, 272
(Tex. Crim. App. 1991).

Photographs of a dead body taken before an autopsy are
relevant when they depict the nature and extent of injuries.  See Sandles
v. State, 857 S.W.2d 932, 937B38 (Tex. App.CHouston [1st
Dist.] 1993, pet. ref=d).  Autopsy photographs are usually
admissible unless they show mutilation of the body caused by the autopsy.  See
Hayes v. State, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002).  But even
then, if the disturbing nature of the photographs is due primarily to the
injuries caused by the criminal behavior, the changes to the victim=s body caused by
the autopsy are of minor significance.  Id. 








Here, all of the photographs in the record were 8" x
10" and in black and white.  None of the photographs depicted a totally
nude body, although the complainant=s shirt was
partially raised or removed in some crime scene photos and the autopsy photos
showed the deceased=s bare chest and torso.  Hillard does not
specifically complain about the size or color of the photographs.

State=s Exhibit 16 depicts the complainant=s head, with the
eyes partially open, and contusions on the face.  State=s Exhibit 17
depicts the complainant=s body with the shirt raised, and shows
some of the bullet wounds on the torso.  State=s Exhibit 18
depicts the complainant=s clothed lower torso and legs amidst
broken bottles and an overturned chair at the crime scene.  State=s Exhibit 19
depicts a closer view of the complainant=s pants with
bloodstains on them.  State=s Exhibit 20 depicts another view of the
complainant=s clothed lower torso, pants with bloodstains, and
surrounding debris as it appeared at the crime scene. 

These five photographs, which a police sergeant testified
accurately depicted the crime scene, were not exactly alike, were not
unnecessarily duplicative, took almost no time to introduce in evidence, and
had very little, if any,  potential to impress the jury in an irrational but
indelible way.  The photos were relevant to show the circumstances of the
killing and the crime scene at the time.  Although the photographs of the
complainant=s body at the crime scene may be somewhat disturbing,
their disturbing effect is due to the circumstances of the crime rather than
any particular images depicted in the photographs.  The trial court=s ruling that the
probative value of State=s Exhibits 16B20 outweighed any
prejudicial effect was within the zone of reasonable disagreement.  See Montgomery,
810 S.W.2d at 391.  Therefore, the trial court did not abuse its discretion by
admitting these photographs into evidence.








The nine autopsy photographs, State=s Exhibits 27B35, were taken
before any autopsy procedures were begun and were admitted during the testimony
of Dr. Kathryn Pinneri, the assistant medical examiner who prepared the autopsy
report.  The photographs depict the deceased complainant=s head and body,
and various different views of the four gunshot wounds.  According to Dr.
Pinneri=s testimony, four
of the photographs depict views of the location of each of the four gunshot
wounds on the torso of the complainant=s body, and
another four are close-up photographs of each gunshot wound.  The ninth
photograph, State=s Exhibit 35, depicts the complainant=s face.

There was only one photograph of each gunshot wound showing
its general location on the complainant=s torso and only
one close-up view of it.  The photographs were not duplicative, and showed only
the nature and extent of the wounds and injuries.  None of the photographs
depicted any autopsy-related mutilation of the complainant=s body or anything
else that could be viewed as unnecessarily disturbing.  Dr. Pinneri referred to
all of the gunshot-wound photographs during her testimony, and they were
relevant and of a nature that would be helpful to the jury in understanding
both her testimony and her opinion as to the cause of the complainant=s death.  It took
little time to introduce the photographs in evidence, and none had any real
potential to impress the jury in an irrational but indelible way.  Therefore,
the trial court did not abuse its discretion in admitting them.  See Hayes,
85 S.W.3d at 16; Sandles, 857 S.W.2d at 937B38.

C.      Hilliard=s Request to
Reopen Evidence

In his third issue, Hilliard contends that, in the
punishment stage of trial, the trial court abused its discretion by refusing
his request to reopen evidence and admit before the jury additional evidence
regarding one of his alleged prior convictions.  Specifically, Hilliard
contends that his copy of one of the judgments used to support the State=s enhancement
allegations differed from the judgment included in the penitentiary packet
offered as State=s Exhibit 38, because the judgment in that
exhibit specifies his alleged prior conviction as a second-degree felony, but
the copy he sought to offer does not.  








Hilliard argues that the Adue administration
of justice@ required the trial court to reopen the case if the
evidence would materially change the case in the proponent=s favor.  See
Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 2007); Peek v. State, 106
S.W.3d 72, 79 (Tex. Crim. App. 2003).  According to Hilliard, the trial court
abused its discretion in refusing his request to reopen the evidence because it
would have taken only a few moments to introduce a single document, the
document was relevant, and its admission would have materially changed the
case.  Hilliard contends that introducing his copy of the judgment would have
shown the State=s documentation of his alleged convictions
to be Asuspect and
unreliable@ and raised questions about whether the purported
prior conviction could even be used to enhance his punishment.

At the punishment hearing, the State offered in evidence
two pen packets identified as State=s Exhibits 38 and
39.  Hilliard=s trial counsel objected to both exhibits, stating, AState=s 38 appears to
have been taken apart and put back together; 39 is probably with the staples. 
I object to those, 38 and 39, being admitted.@  He offered no
evidence suggesting that the exhibits may have been altered.  The trial court
admitted both over Hilliard=s objection. 

After both sides rested, and during his final argument,
Hilliard=s counsel
approached the bench and advised that his copy of the judgment that he got from
the district clerk=s office differed from that in State=s Exhibit 38.  The
judge retired the jury, and Hilliard=s counsel stated
that what he got Afrom . . . the district clerk=s office is
different from what TDC has.  And I would like the opportunity to reopen to
submit to the jury a certified copy of the judgment from the clerk=s office.@  He further
stated, AIt does not say on
the judgment I got that it was a felony.  It doesn=t have
second-degree circled.@








Although Hilliard=s counsel stated
that he would like to submit to the jury a certified copy of the judgment from
the clerk=s office, he did not state that his copy of the
judgment, which was later admitted in evidence for the purpose of the record as
Defendant=s Exhibit 1, was a certified copy.  In response to the
motion to reopen, the prosecutor pointed out that the difference was irrelevant
because the offense of conviction as shown on Hilliard=s exhibit, namely
possession with intent to deliver one to four grams of a controlled substance
(here, cocaine), was Aindeed a felony offense and he was
sentenced to the penitentiary@ and Athere would be no
other type of offense for which he could go to the penitentiary than a felony.@  The trial court
denied Hilliard=s motion to reopen, then admitted Defense
Exhibit 1 for appellate purposes, but not before the jury.

As Hilliard correctly contends, a trial judge is required
to reopen a case if the proffered evidence is necessary to a due administration
of justice.  See Tex. Code Crim. Proc. Ann. art. 36.02 (AThe court shall
allow testimony to be introduced at any time before the argument of a cause is
concluded, if it appears that it is necessary to a due administration of
justice.@).  ADue administration
of justice@ means the trial court should reopen the case Aif the evidence
would materially change the case in the proponent=s favor.@  See Peek,
106 S.W.3d at 79.  We review the trial court=s decision on a
motion to reopen for an abuse of discretion.  See id.  To establish that
the evidence would materially change the case in the proponent=s favor, the
proponent of the evidence must show that it is Amore than just
relevantCit must actually
make a difference in the case.@  Id. 








State=s Exhibit 38 shows a box checked
indicating that Hilliard was convicted of a felony with the degree circled as A2nd,@ but Defendant=s Exhibit 1 does
not.  Other than this difference, both exhibits show that he was convicted of
the offense of possession with intent to deliver a controlled substance, namely
cocaine, weighing over one but less than four grams, an offense designated by
law as a felony, and Hilliard received a three-and-a-half-year prison
sentence.  See Tex. Penal Code Ann. ' 1.07(23) (Vernon
Supp. 2008) (defining Afelony@ to mean Aan offense so
designated by law or punishable by death or confinement in a penitentiary.@); Tex. Health
& Safety Code ' 481.112(c) (Vernon 2003) (providing
offense of possession with intent to deliver cocaine weighing one gram and less
than four grams is a second-degree felony).  Thus, even if Defendant=s Exhibit 1, which
does not appear to be a certified copy, were admissible, the trial court could
have concluded that its admission would not have materially changed the outcome
of the case.  Despite the discrepancies between Exhibit 1and State=s Exhibit 38, both
reflected that Hilliard had been convicted of the felony offense for which he
had been indicted.  The trial court did not abuse its discretion in refusing to
reopen evidence.

Conclusion

We overrule Hilliard=s issues and
affirm the trial court=s judgment.

 

 

/s/      Jeffrey V. Brown

Justice

 

 

Panel consists of
Justices Frost, Brown, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  After pointing out that the instruction was
conditioned by the phrase Aif any,@ the trial court denied Hilliard=s objection, stating to his counsel, AYou may certainly argue that there was absolutely no
previous relationship shown by the evidence during this case.@  Neither party mentioned or commented on the
instruction during final argument, or suggested the existence of any prior
relationship.